STATE of South Dakota, Plaintiff and Appellee,

v.

William K. ANDREWS, aka Kurt D. Andrews, Defendant and Appellant.

No. 15102.

Supreme Court of South Dakota.

Aug. 27, 1986.

Craig M. Eichstadt, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen. (on brief), Pierre, for plaintiff and appellee.

Frank A. Bettmann, of Bettmann & Feehan, Rapid City, for defendant and appellant.

WUEST, Justice.

Appellant William K. Andrews (appellant) was convicted of aggravated assault and appeals. We affirm.

On the evening of March 9, 1985, Ruben McCloskey (McCloskey), an adult male, was severely injured in a fight in the Lakota Homes area of Rapid City, South Dakota. The fight occurred in the front yard of a residence where McCloskey was visiting. A group of adult males appeared at the front of the house around 8:00 p.m. carrying baseball bats and other clubs. It may have been that the assailants originally intended to bring damage to McCloskey's car, but as McCloskey came out of the house, himself carrying a shovel, the group attacked and severely beat him with their clubs. McCloskey required nearly six months of hospital treatment and remains partially paralyzed as a result of his injuries.

A history of violent interfamily relations between two existing factions in the Lakota Homes area in Rapid City serves as a backdrop to this case. This violent history was also one of the considerations that the trial court highlighted when it imposed ten-year prison terms upon the two men found guilty of the assault.

Other individuals were involved in the assault but were not identified nor charged by authorities. Appellant and his codefendant, however, were convicted by the jury for aggravated assault and sentenced to the statutory maximum of ten years in the South Dakota State Penitentiary. SDCL 22–18–1.1(4); SDCL 22–6–1(5).

Appellant appeals his conviction on the grounds that he was wrongfully denied a separate trial, convicted without sufficient evidence, and prejudiced by an improper jury instruction. He also argues his sentence violates the Eighth Amendment guarantee against cruel and unusual punishment.

■ A joint indictment or information is allowed when the same evidence, as to the conduct constituting the offense charged, applies to all the persons accused. The pertinent South Dakota statute is SDCL 23A–6–24, which states in part:

Two or more defendants may be charged in the same indictment or information, if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses....

■ Law generally favors joint trial for reasons of judicial economy and presentation of the whole of an alleged act or transaction at one time. The general rule has evolved that persons jointly indicted should be tried together. This is especially true where, as here, one crime may be proved against two or more defendants from the same evidence. *State v. No Heart*, 353 N.W.2d 43 (S.D.1984); *State v. Layton*, 337 N.W.2d 809 (S.D.1983).

■ When two or more defendants are charged jointly with an offense, any defendant who fears that his defense may be prejudiced by a joint trial may move for severance. The granting of a severance is not a matter of right, but rests in the discretion of the court, to be exercised in the interest of justice. SDCL 23A–11–2 provides, in part:

If it appears that a defendant or the state is prejudiced by a joinder of of-

fenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

In the absence of a legal ground, there should be no order for severance. 23 C.J.S. *Severance* § 935 (1961).

■ When considering a motion for severance, the court must balance the right of a defendant to a fair trial against the interests of judicial efficiency. *No Heart, supra; Layton, supra.* The court must consider not only possible prejudice to the defendant seeking severance, but also possible prejudice to the government because of two time-consuming, expensive, and duplicitous trials. *United States v. Andreadis,* 238 F.Supp. 800 (D.C.N.Y.1965). Notwithstanding the need for efficiency, a joint trial is inappropriate if it sacrifices a defendant's right to a fair trial. *State v. Reiman,* 284 N.W.2d 860 (S.D.1979).

Decisions to sever a trial are completely a matter within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. *State v. Maves,* 358 N.W.2d 805 (S.D.1984); *Layton, supra; No Heart, supra.* A clear showing of prejudice and abuse of discretion must be shown to justify reversal based on a denial of a motion for severance. *Maves, supra; No Heart, supra.*

■ Where each convicted defendant is shown to have participated in a common criminal act, more must be shown than a severance might have afforded an increased chance of acquittal. A defendant must demonstrate affirmatively that the joint trial prejudiced the possibility of a fair trial. *Maves, supra; No Heart, supra.* Such a case would exist where defendants' defense strategies are antagonistic. *No Heart, supra.* It is not enough to allege that evidence presented against his codefendants would tend to cumulate prejudicially against him, nor is it enough for him to demand severance because he did not participate in an alleged crime as actively as did his codefendants. *United States v. Garrison,* 348 F.Supp. 1112 (D.C. La.1972).

■ With respect to propriety of severance in a trial of co-conspirators or codefendants, it is necessary to determine whether joint trial infringes defendant's right to a fundamentally fair trial and determination is made by asking whether it is within the jury's capacity, given the complexity of the case, to follow admonitory instructions and to keep, separate, collate, and appraise evidence relevant to each defendant. *United States v. Kahn,* 381 F.2d 824 (7th Cir.1967).

■ Admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversal when proper limiting instructions are given to the jury. *Maves, supra; No Heart, supra; State v. Bonrud,* 246 N.W.2d 790 (S.D.1976). We presume the jury followed the limiting instructions. *Maves, supra; No Heart, supra.*

■ At trial of this case, the court instructed the jury at the close of the evidence that each defendant was entitled to have his guilt or innocence of the crime charged determined from his own conduct and from the evidence which applied only to him as though he were being tried alone. This court has held that such language is a sufficient cautionary instruction which guards against prejudice to an individual defendant in a joint trial. *Maves, supra.*

Appellant argues the evidence against him was not as strong as that shown against his codefendant. That situation did not warrant a severance, nor deny appellant a fair trial.

Appellant claims the trial court should have granted his motion for a judgment of acquittal. The trial court must consider the evidence in the light most favorable to the nonmoving party when ruling on a motion for judgment of acquittal and must give the nonmoving party the benefit of all reasonable inferences in its favor. *State v. Bult,* 351 N.W.2d 731 (S.D.1984).

Our standard of review on denial of this motion is whether the State made out a prima facie case from which the jury could reasonably find the defendant guilty. *Bult, supra; State v. Blakey,* 332 N.W.2d 729 (S.D.1983). Sufficiency of trial evidence rests on whether the evidence, if believed by the jury, is sufficient to find guilt beyond a reasonable doubt. *State v. Faehnrich,* 359 N.W.2d 895 (S.D.1984); *State v. Phinney,* 348 N.W.2d 466 (S.D. 1984); *State v. Jorgensen,* 333 N.W.2d 725 (S.D.1983).

In making such determination, this court will accept evidence and the most favorable inferences that can be fairly drawn from that evidence which will support the guilty verdict. *Faehnrich, supra; State v. Schafer,* 297 N.W.2d 473 (S.D.1980). The verdict will not be set aside if the evidence therefrom sustains a rational theory of guilt. *Faehnrich, supra.* It is not an appropriate function of this court to resolve conflicts of evidence, determine credibility of witnesses, or weigh the evidence. *State v. Battest,* 295 N.W.2d 739 (S.D.1980); *State v. Minkel,* 89 S.D. 144, 230 N.W.2d 233 (1975). Questions of credibility and weight of the evidence are jury questions. *Blakey, supra; State v. Peck,* 82 S.D. 561, 150 N.W.2d 725 (1967); *State v. Burtts,* 81 S.D. 150, 132 N.W.2d 209 (1964).

The State's witnesses were not able to identify all of the participants in the assault. Each of the witnesses had no trouble, however, identifying both defendants, Robert Quick Bear and appellant, as two of the assailants. LaVonne Roach, who had known both defendants for a considerable period of time, specifically identified both of them as having beaten McCloskey. She stated that they had him surrounded in a circle and were beating him. In addition, she testified that she herself was hit and suffered a skull fracture and concussion. She did not, however, know who hit her. Linda Rich Ackfield stated that she saw Quick Bear and appellant running down the street toward McCloskey, and she saw both appellant and Quick Bear hitting McCloskey after he had fallen down. Vera Janis testified she specifically saw appellant beating McCloskey with a club. Stacie Bad Wound testified she saw Quick Bear hitting McCloskey toward the end of the fight, while appellant stood back some four to five feet from McCloskey. Charlene "Cissy" Janis, a daughter of Vera Janis, saw appellant hit McCloskey with a club during the same time frame. On cross-examination, she stated that she specifically saw appellant hitting McCloskey.

McCloskey was seriously injured by the beating. He had some paralysis in the legs and toes as a result. His head was "cracked open" and surgery may be necessary in the future. His physician, Dr. Bryan Carlson, described serious injuries of the same nature, which were potentially life threatening and which were fully consistent with being beaten about the head and body in the manner described. McCloskey himself testified that he was acquainted with appellant and Quick Bear, and that he saw both of them hitting him with a club. We hold this evidence was sufficient to deny appellant's motion for a judgment of acquittal.

Appellant further claims that the jury instruction given at the trial concerning prior inconsistent statements was improper because it was an unclear statement of the law and potentially misleading to the jury. Instruction No. 14, which was identical to the South Dakota Pattern Jury Instruction Criminal 1–17–8, read as follows:

The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement on the matter of fact or acted in a manner inconsistent with his or her testimony in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness, *but you must not consider any such prior statement as establishing the truth of any matter contained in that statement.* (Emphasis added.)

Appellant argues that there was a certain amount of impeachment of the State's witnesses demonstrated at trial based on prior inconsistent statements, but the impeachment value was lost on the jury because of the last sentence of the instruction given. Appellant told the trial court he thought the last sentence of the instruction might mislead a lay jury into thinking that, since any prior inconsistent statement is not admissible as proof of the matter which was asserted, by negative implication, testimony given on the stand must be considered as the truth. As he stated: "In effect, the instruction appears to be telling the jury that even though a witness has been impeached ... the jury cannot take that prior statement as truth but, by implication, must take the present statement as truth." Appellant therefore sought to substitute the last sentence of Instruction No. 14 with the last sentence of his own proposed instruction, which read:

You're instructed that one way of impeaching a witness is by showing that the witness has made different and contradictory statements on the same point on a former occasion. *If it appears from the evidence that any witness has been impeached in this manner, you have a right to take that into consideration in determining his credibility and the weight of his testimony.* (Emphasis added.)

The trial court denied appellant's exception to Instruction No. 14 as it felt the instruction adequately covered the law concerning impeachment by prior inconsistent statements.

On appeal to this court, appellant concedes that a prior inconsistent statement used to impeach a witness is usually allowed to affect the witness' credibility but not to support the truth of the prior statement. Further, appellant concedes that the last sentence of Instruction No. 14 is legally accurate and is, as the State has argued, necessary to inform the jury that such statements admitted for impeachment are not to be considered as substantive evidence on the truth of the matters asserted since they are hearsay.

Further, appellant has supplied no authority holding this instruction to be misleading in the manner in which he claims, or to be inadequate in its purpose—to instruct a jury on the proper use of extrajudicial statements for impeachment of witnesses and their testimony at trial.

Appellant offered examples of impeachment evidence of State witnesses by referring to one witness, Linda Ackfield, who arguably but not definitively may have given an inconsistent statement when she testified at preliminary hearing to facts inconsistent with her testimony at trial. Any prior inconsistent statement by that witness at preliminary hearing was offered merely to impeach the witness and not as substantive evidence as to the truth of the earlier statement.

*In State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980), we held it was error for the court under the facts of that case to refuse Pattern Jury Instruction 1–17–8. *In State v. Gage,* 302 N.W.2d 793, 798 (S.D.1981), we quoted *United States v. Rogers,* 549 F.2d 490, 495 (8th Cir.1976), holding there are four " 'requirements founded in fundamental fairness [for] the use of prior inconsistent statements for impeachment." After stating the first three requirements, we said: "4) Limiting instructions: The trial court 'must adequately instruct the jury about the limited purpose for which the prior inconsistent statement is admitted.' " What the trial court did in this case was comply with that mandate when it instructed the jury *"but you must not consider any such prior statement as establishing the truth of any matter contained in that statement."* (Emphasis added.)

As to Ms. Ackfield's statement and those made by other witnesses prior to trial, the sole purpose for their employment by appellant was to impeach the credibility of the witnesses and the testimony at trial. Therefore, there was no error in instructing the jury as to the single limited purpose for the prior inconsistent statements—impeachment—and in not allowing the jury to consider the prior statements as evidence

of truth to any matter asserted in the prior statements. There is simply no authority to show that the instruction given could somehow lead the jury to believe that by the instruction given they could not judge the witnesses and their testimony for themselves.

We note the provisions of SDCL 19–16–2(1), which provide:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

(1) inconsistent with his testimony and was given under oath and subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]

Appellant never discussed this statute, possibly because he did not want the prior testimony to be used as substantive evidence and because he did not offer it. The authorities recognize that prior inconsistent testimony may be admitted as substantive evidence and that instructions limiting their use may be ineffective or inappropriate. *See generally* 4 J. Weinstein and M. Berger, *Weinstein's Evidence* §§ 801(d)(1)[01] and (d)(1)[A] (1985); 4 D. Louisell and C. Mueller, *Federal Evidence* § 419 (1980); M. Graham, *Handbook of Federal Evidence* § 801.11 (2d ed. 1986). The legal commentators have proposed at least one instruction giving substantive effect to prior inconsistent testimony. *Weinstein* at 801–105.

We further observe that Pattern Jury Instruction Criminal 1–17–8 has been replaced with Pattern Jury Instruction Criminal 1–15–9 (1985). The latter contains a comment that the portion of the instruction providing "but you must not consider any such prior statement as establishing the truth of any fact contained in that statement" should be used only when the instruction is used *solely* for impeachment. Apparently, the pattern jury instruction committee sought to address the situation when prior inconsistent testimony is admitted as substantive evidence.

We now consider the final issue presented to this court—whether the sentence of ten years constitutes cruel and unusual punishment under the Eighth Amendment. Appellant argues that, in this case, his sentence was cruel and unusual punishment and therefore unconstitutional.

Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637, 649 n. 16 (1983).

Appellant was convicted of aggravated assault, which carries a ten-year prison term and a possible $10,000 fine. On review, we first determine whether a sentence shocks the conscience or is so disproportionate to the crime so as to activate the Eighth Amendment "within and without jurisdiction" proportionality test enunciated in *Helm, supra. State v. Weiker,* 366 N.W.2d 823 (S.D.1985).

Under the circumstances of this case, the ten years' imprisonment is not so severe and so entirely out of proportion to the gravity of the offense actually committed as to shock the conscience of this court. The victim was nearly killed and is partially paralyzed for life as the result of appellant's crime. The trial court's comments upon sentencing support the severity of the beating. The victim received hospital treatment for almost six months because of his injuries. The injuries were life threatening and could have resulted in death. The victim may not ever be able to return to his original line of work. We agree that severity of the crime justified imposition of the sentence.

The record does not reflect any evidence that would allow this court to determine whether the sentence is disproportionate to sentences imposed on other convicted defendants in the same jurisdic-

tion. Without the benefit of any information from the State or appellant, we decline to find the sentence in this case to be disproportionate to sentences given in similar cases, nor does the record offer any evidence suggesting that the sentence imposed was disproportionate from what can be found in other jurisdictions. Again, appellant does not offer evidence we can use to examine this case within the tests we have outlined in *Weiker, supra.* When we examine the out-of-state proportionality evidence provided by the State, it is apparent that South Dakota's statute is not beyond the norm. Minnesota and Wyoming allow ten-year sentences for similar offenses. Minn.Stat.Ann. § 609.221; Wyo.Stat. § 6-2-502. Nebraska and Montana provide for a maximum of twenty years for similar offenses. Neb.Rev.Stat. §§ 28-308 and 28-105; Mont.Code Ann. § 45-5-202. North Dakota's maximum for aggravated assault is lower, at five years. N.D.Cent.Code §§ 12.1-17-02 and 12.1-32-01(4).

We do not find that the sentence of ten years for aggravated assault in this case in any way "shocks the conscience" nor was it disproportionate to similar offenses or in surrounding jurisdictions.

Therefore, the conviction and sentence rendered by the trial court are affirmed.

FOSHEIM, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I concur with the majority in the result and write specially to point out the following:

One of the State's witnesses, Linda Rich Ackfield, testified at trial that she saw defendant Andrews strike McCloskey, yet she was properly impeached with her own prior preliminary hearing statement that she only saw Doyle strike McCloskey and herself.

Under Instruction # 14, the jury was told that they must not consider any such prior statement as establishing the truth of any matter contained in that statement. Instruction # 14 implied to the jury that they should not take the prior statement as true and only look for truth in what was presented at trial, i.e., that the witness did see Andrews strike the victim.

Defendant objected to Instruction # 14 [1] and also sought to replace the last sentence thereof with the last sentence of his own proposed instruction # 3. [2] The proposed substitution was proper and it would have been better practice on the part of the trial court to have given it. However, it is questionable whether the trial court's refusal to give it constitutes error. At any rate, it did not constitute reversible error in view of all of the other witnesses who independently identified Andrews as striking and beating upon McCloskey.

---

**1.** Instruction # 14 is set forth in full in the majority opinion on page 80.

**2.** Instruction # 3 is set forth in full in the majority opinion on page 81.