STATE of South Dakota, Plaintiff
and Appellee,

v.

Raymond J. SHAPE, and Dan C. Rindal,
Defendants and Appellants.

Nos. 18125, 18126.

Supreme Court of South Dakota.

Argued Oct. 6, 1993.

Decided June 8, 1994.

Mark Barnett, Atty. Gen., Thomas J. Welk, Sp. Asst. Atty. Gen., Sioux Falls, Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Robert Chavis, Yankton, for defendant and appellant Shape.

Rodney C. Leholz, Rapid City, Frank B. Morrison, Jr., Kalispel, MT, for defendant and appellant Rindal.

McKEEVER, Circuit Judge.

This is an intermediate appeal from a denial of several pre-trial motions. Specifically,

the defendants appeal from rulings of the circuit court denying motions for: (1) appointment of co-counsel, (2) relief from prejudicial joinder of offenses, (3) relief from prejudicial joinder of defendants, (4) a continuance, (5) allowing a Montana attorney, Frank Morrison, to represent Rindal as local counsel, (6) a bill of particulars, and (7) certification of certain defense witnesses. We reverse in part and remand.

## FACTS

Raymond J. Shape and Dan C. Rindal (Defendants) were jointly indicted by a Yankton County grand jury on November 27, 1991. Shape was indicted on one count of conspiracy to commit theft by deception, one count of grand theft by deception, one count of embezzlement, and two counts of perjury. Rindal was jointly indicted on the charges of conspiracy to commit theft by deception and grand theft by deception.

These charges arose from dealings between Defendants and Louis Dreyfus Corporation (LDC), a Connecticut corporation. LDC's goal was to purchase cattle, feed them, and then sell the livestock for a profit. Some refer to this as engaging in managed price risk or applying a price hedging program. LDC accomplished this by utilizing associates to manage hundreds of thousands of head of cattle placed at various locations throughout the United States.

Rindal, a Montana rancher, became interested in this arrangement and approached Seckler, Inc. (Seckler), an associate of LDC in March of 1987. After some negotiation, Rindal, LDC and Seckler agreed to place 4,000 head of cattle on Rindal's Montana ranch. Based on an informal agreement between Rindal and Shape, a South Dakota farmer and rancher, Shape helped manage some of the LDC cattle for Rindal. After further negotiations, Shape was allowed to purchase 300–400 head of the 4,000 cattle placed in Montana.

In July of 1987, Rindal stated that he and Shape had purchased a ranch in Avon, South Dakota. The parties agreed that the Avon ranch, coupled with the Montana ranch, provided an ideal situation for cow-calf operations. Rindal then agreed to a riskier feeding arrangement whereby he would guarantee bottom-line profit. Eventually, Rindal, with the assistance of Shape, was attempting to manage between 20,000 and 30,000 head of cattle in four states.[1]

Cattle were delivered to the Avon ranch, and then placed at various locations in Yankton County, Bon Homme County, and northern Nebraska. Shape and his family operated these locations, but Defendants worked together. According to Defendants' arrangement, Shape purchased the cattle and placed them at the various locations, reporting these purchases to Rindal. Rindal then relayed this information to Seckler who forwarded it to LDC. LDC, in turn, reimbursed Shape and Rindal for the cattle they purchased. LDC also reimbursed Rindal for the costs of feeding the cattle. Between March of 1987 and April of 1989, hundreds of cattle transactions occurred. LDC and Seckler created a file folder for each transaction.

During the latter portion of 1988, Seckler claimed that cattle were missing from the South Dakota herd. Seckler demanded that Rindal either make a cash payment or offset receivables in the amount of approximately $696,000, convey 1060 head of cattle, or feed certain LDC cattle at his own expense. Rindal complied claiming that he believed that he would be credited for his payment when the "error" was found. In March of 1989, LDC and Seckler alleged that 4,000 head of cattle were missing while under the control of Rindal and Shape. Rindal, Seckler and LDC terminated their business agreement in April of 1989.

In the month that followed, LDC retained various investigators to attempt to locate the alleged missing cattle. One group of investigators, Quigley Powers & Associates (Quigley Powers) of Pierre, South Dakota, retained other investigators in five states to assist their attempt to locate the missing cattle. The Quigley Powers investigation en-

---

1. During the time period with which this case is concerned, Seckler was managing some 200,000 head of LDC cattle.

compassed approximately a one month time period and produced a file comprised of at least five 3–inch thick notebooks. In the meantime, Rindal launched a civil suit against LDC and Seckler in federal court in Montana. In that suit, Rindal sought millions of dollars in damages alleging that LDC and Seckler devised a scheme to fraudulently obtain money and services from Rindal.

Shortly after Rindal launched the civil suit, LDC and Seckler began cooperating with the State of South Dakota to initiate criminal charges against Defendants. The South Dakota Division of Criminal Investigation (DCI) instituted its own investigation into the matter. DCI utilized seven of their own agents and one Colorado agent to interview witnesses in several states. The DCI investigation resulted in a lengthy report containing several thousand pages of LDC documents. The result of these investigations were the indictments of Defendants by the grand jury.[2] A special assistant attorney general has been appointed to assist the prosecution of the case.

Discovery in this case has been a lengthy, difficult process. The sheer volume of materials is overwhelming. A significant time commitment is required to absorb the information contained in thousands of pages of documents. Furthermore, documents and potential witnesses are located in several states. Over 100 potential witnesses have been identified. The volume and location of discovery materials has presented special difficulties for Shape's counsel because he is a solo practitioner.

The existence of the civil suit has also complicated the discovery process. Defendants' counsel experienced additional difficulties obtaining the Quigley Powers materials because LDC counsel claimed that those materials are work-product for the civil suit. It has been difficult for all parties to effectively exchange discovery materials and the result has been a protracted, frustrating discovery process.

A motion hearing took place on August 20, 1992. At that hearing, counsel for Shape argued for the appointment of co-counsel.

Counsel desired such appointment due to his own health concerns, the sheer magnitude of the case, and other personal concerns. This motion was denied. Another hearing was conducted on October 26, 1992, to consider Defendant's motions for a continuance, for relief from prejudicial joinder of offenses, for relief from prejudicial joinder of defendants, and for a bill of particulars. These motions were also denied. This Court granted an intermediate appeal from the order of the trial court denying the motions. Discovery continued, and on November 16, 1992, another motion hearing was held on motions to dismiss, to compel deposition, to produce, to certify material witnesses, and for a continuance. Nineteen witnesses residing out of state were certified for the defense, but the balance of Defendants' motions were denied. This intermediate appeal followed.

## DECISION

### I.

### APPOINTMENT OF CO–COUNSEL

■ Defendants are entitled to a fair trial. A component of a fair trial is effective assistance of counsel. *State v. McBride*, 296 N.W.2d 551, 553 (S.D.1980). The South Dakota Constitution guarantees that an accused has a right to the assistance of counsel. S.D. Const. art. VI, § 7. Appointment of counsel is reviewed under the abuse of discretion standard. *Miller v. State*, 344 N.W.2d 78, 83 (S.D.1984). "We will reverse the [trial] court's decision only in the event of an abuse of discretion." *State v. Bartlett*, 411 N.W.2d 411, 413 (S.D.1987). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by and clearly against reason and evidence." *State v. Pfaff*, 456 N.W.2d 558, at 561 (S.D.1990).

■ Although the trial court appointed counsel to defend Shape, the resources of counsel for Shape are limited. The discovery process alone involves examining and analyzing thousands of pages of documents located in several states. Counsel for Shape has

---

**2.** The perjury charges against Shape resulted from his testimony to the Grand Jury with regard

to Exhibit 44, an invoice from one cattle transaction.

admitted to this Court, both in his brief and at oral argument, that the sheer volume of this case is more than he can handle as a solo practitioner. Handling this complex case for Shape jeopardizes this attorney's practice, but more importantly draws into question whether Shape will receive effective assistance of counsel.

Given the complexities involved in this case, the enormous amount of material to be reviewed, and the vast disparity between the meager resources of counsel for Shape as opposed to the limitless resources employed by the state, the trial court's denial of Shape's motion for appointment of co-counsel was an abuse of discretion under the state of this record. We therefore reverse the decision of the trial court which denied appointment of co-counsel for Shape and remand to the trial court with directions to appoint co-counsel for Shape.

## II.

### SEVERANCE OF OFFENSES

■ We now examine whether the perjury charges should be separated from the conspiracy, theft by deception and embezzlement charges (theft-related charges).[3] This Court must determine whether the charges were properly joined under SDCL 23A–6–23. If none of the tests allowing joinder under SDCL 23A–6–23 are met, SDCL 23A–11–2 provides relief from prejudicial joinder by allowing severance of the offenses. *State v. Dixon*, 419 N.W.2d 699, 702 (S.D.1988). If the charges are properly joined, then the party opposing joinder of the offenses must establish prejudice by sufficient evidence to justify severance of the counts under SDCL 23A–11–2. *Dixon*, 419 N.W.2d at 702. The standard of review with regard to severance due to prejudicial joinder of offenses is whether the trial court abused its discretion by denying the motion for severance. *Id.* (citations omitted). Such an abuse of discretion "arises only where the party requesting severance of joined counts can make 'a clear

showing of prejudice to substantial rights.' " *Dixon*, 419 N.W.2d at 702.

SDCL 23A–6–23 controls joinder of offenses in indictments and informations. That statute provides:

> Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

This statute contains three tests which permit joinder of offenses.

### A.

■ The first test allows joinder if the offenses were of the same or similar character. This Court has noted that this test has been broadly construed. *Dixon*, 419 N.W.2d at 702. SDCL 22–29–1 defines perjury as follows:

> Any person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, intentionally and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury.

The nature of perjury involves making a statement known to be false, contrary to an oath to tell the truth. *See* 60A Am.Jur.2d, *Perjury* § 2, (1988). The theft-related charges involve depriving LDC and Seckler of cattle. In simplest terms, the perjury charges are concerned with false statements made under oath and the theft-related charges are concerned with a wrongful taking of another's property. It is obvious that under the facts of this case, we must conclude that the perjury charges are not of the same or similar character as the theft-related charges for the purposes of meeting this prong of the test.

---

**3.** In his brief, Shape argues that the perjury charges should be severed from the theft-related counts. We will not, therefore, examine the pro-

priety of joinder of the three theft-related charges.

## B.

■ The second test allows for joinder of offenses which are based on the same act or transaction. The theft-related charges are alleged to have stemmed from various cattle purchases made between August of 1988 and April of 1989. As a result of these allegations, LDC and Seckler terminated their business arrangement with Rindal and Shape. Therefore, as of April of 1989, all acts and transactions which led to the theft-related charges had ceased. The perjury charges are based on testimony Shape gave to the grand jury nearly two years later on September 26, 1991. The act or transaction which led to the perjury charges was Shape's testimony to the grand jury regarding Exhibit 44. Under these facts we conclude that the perjury charges and theft-related charges stem from two separate acts for purposes of joinder under this prong of the test. Therefore, they cannot be joined under this theory.

## C.

■ The third test allows joinder if the charges are based on acts which constitute a common scheme or plan. The state argues that the alleged perjury was part of an ongoing effort to defraud LDC and escape prosecution for such. This fails to meet the test. The theft charges relate to an alleged effort to defraud LDC. The perjury charges involve an alleged effort to frustrate the grand jury nearly two years later. Under the facts of this case, it appears that the two year time lapse between the alleged thefts and alleged perjury makes it so unclear as to whether or not these charges relate to a common scheme or plan that there exists a grave doubt that this prong of the test has been satisfied.

However, even if the state could successfully argue that the prong was satisfied, it would still be necessary under the state of this record to sever the perjury charges from the theft related charges because of the prejudice to the defendants that would exist as a result of a joint trial of these charges. SDCL 23A–11–2 allows relief from prejudicial joinder of offenses or defendants.

Therefore, the decision of the trial court denying severance of the offenses is reversed, and we remand with directions to sever the perjury charges from the theft-related charges.

## III.

### SEVERANCE OF DEFENDANTS

■ SDCL 23A–6–24 allows two or more defendants to be charged in one indictment or information if they are alleged to have participated in the same act or acts which constitute the offense. As a general rule, the law favors joint trial for reasons of judicial economy. *State v. Andrews,* 393 N.W.2d 76, 78 (S.D.1986). Persons jointly indicted should be jointly tried. *Id.* Any defendant who fears that his defense may be prejudiced by a joint trial may, however, move for a severance. SDCL 23A–11–2 provides in part:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires....

Thus, severance is not a matter of right; it is a matter of the court's discretion to be granted as justice requires. *Andrews,* 393 N.W.2d at 78. The Court must balance the defendant's right to a fair trial against the interests of judicial efficiency. *Id.* at 79.

■ This Court will reverse a trial court's refusal to grant a severance only if a defendant demonstrates an abuse of discretion. *State v. Jenner,* 434 N.W.2d 76, 80 (S.D.1988) (citations omitted). This Court has noted that "[a] certain amount of prejudice to a defendant is regarded as acceptable given the judicial economies that result from joinder." *Jenner,* 434 N.W.2d at 80 (citing *United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), cert. denied, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983)). An abuse of such discretion is established by a showing of substantial prejudice which amounts to a denial of a fair trial.

■ This Court has had ample occasion to examine the level of prejudice which must be demonstrated to establish an abuse of discretion in a severance of a joinder of defendants. *See Jenner,* 434 N.W.2d at 80; *State v. Honomichl,* 410 N.W.2d 544, 546 (S.D.1987); *State v. Weddell,* 410 N.W.2d 553, 555 (S.D.1987); *Andrews,* 393 N.W.2d at 79; and *State v. No Heart,* 353 N.W.2d 43, 47 (S.D.1984). We have found that:

> To cause the type of prejudice that prevents co-defendants from obtaining a fair trial, the defenses must be more than merely antagonistic. They must conflict to the point of being irreconcilable and mutually exclusive so that acceptance of one defendant's defense will preclude the acquittal of the other defendant.

*Jenner,* 434 N.W.2d at 80 (citations omitted). Hostility among co-defendants is not sufficient. *Id.* at 81. Likewise, one defendant's desire to exculpate himself by inculpating a co-defendant does not necessarily render the defenses irreconcilable and mutually exclusive. *Id.*

■ Shape has indicated that he will not testify with regard to the counts of conspiracy, grand theft by deception, and embezzlement. Rindal, however, has indicated that he will testify on his own behalf. The anticipated thrust of Rindal's testimony will be that he completely relied on Shape to manage the cattle in South Dakota and that Rindal accepted all representations made by Shape. Basically, Rindal's testimony would indicate that if cattle were missing, it must be the fault of Shape because Shape was in charge of the cattle. That is to say that Rindal may inculpate Shape to some extent in an effort to exculpate himself.

Because we have ruled that the perjury charges must be severed from the theft-related charges, the danger that those charges will cause substantial prejudices has been alleviated. Shape will be entitled to an instruction directing the jury to draw no inference from his decision not to testify. Counsel has failed to demonstrate that the defenses, although antagonistic, are completely irreconcilable and mutually exclusive. There has been no showing that acceptance of the anticipated Rindal defense theory will preclude the acquittal of Shape. Because the perjury counts have been severed from the theft-related charges, we see nothing as a matter of law which would permit us to conclude that the trial judge's determination not to sever constituted an abuse of discretion.

We note as a caveat, however, that unanticipated conflicts can arise when defendants are tried jointly. These conflicts can diminish or even abolish judicial economy. Because we have ordered that the perjury charges be severed from the theft-related charges, the trial court should balance the defendants' rights to a fair trial against the interests of judicial efficiency in light of the circumstances as they now exist. *Andrews,* 393 N.W.2d at 79. We therefore remand this issue to the trial court for it to determine if there is any need to review this motion in light of the present circumstances.

## IV.

### MOTION FOR A CONTINUANCE

■ Granting a continuance is a matter within the discretion of the trial court which will not be reversed absent a showing of clear abuse. *State v. Smith,* 325 N.W.2d 304, 306 (S.D.1982). We recognize Defendants' rights to a fair trial and the facts which impinge upon that right. The facts of this case are complex and required vast discovery of voluminous records located in several states. Counsel needed to examine and subpoena out-of-state witnesses. And, as we noted above, the resources of counsel for Shape are limited.

■ However, because we granted an intermediate appeal this issue is now moot. We have held that:

> Before an appeal will be dismissed on the grounds that the questions involved have become moot it must appear clearly and convincingly that the actual controversy has ceased; it must appear that the only judgment which could be entered would be ineffectual for any purpose and would be an idle act concerning rights involved in the action.

*Aetna Life Ins. Co. v. Satterlee,* 475 N.W.2d 569, 572 (S.D.1991). Because of the time

that has passed since this intermediate appeal was granted, we find that any decision which we reached on this issue would be an idle act. This Court, therefore, expressly declines to reach the merits of any abuse of discretion claim on this issue but remands the case back for reasonable scheduling in light of the record as it now exists.

## V.

### REPRESENTATION OF RINDAL BY FRANK MORRISON

██ Since this matter was filed, this Court has certified Mr. Morrison to practice in this state. Because he has satisfied the necessary requirements to practice law in South Dakota and has and is practicing before this Court in this appeal, this issue is also now moot.

## VI.

### MOTION FOR A BILL OF PARTICULARS

Because this Court has reversed the trial court's ruling on severance of the perjury charges from the theft-related charges, and remanded the severance of defendants issue, we also remand this issue to the trial court to determine whether a bill of particulars should be forthcoming in light of the circumstances as they now exist.

## VII.

### REFUSAL TO CERTIFY CERTAIN WITNESSES

Due to the passage of time, and the severance of the perjury charge, this Court remands this issue to the trial court to determine what witnesses should now be certified in light of the circumstances as they now exist.

## CONCLUSION

In conclusion, we remand this case to the circuit court for further proceedings consistent with this opinion.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

McKEEVER, Circuit Judge, for WUEST, J., disqualified.

HENDERSON, Justice (concurring in part and dissenting in part).

I concur in the entirety of this opinion with the exception of Issue III, Severance of Defendants. Granted, the majority opinion grants the trial court leeway to make a final determination on this issue. Notwithstanding, it is my opinion that severance of the defendants would be appropriate because of Rindal's proposed testimony that he relied upon Shape's management of the cattle in South Dakota and that he accepted the statements, direction, and representations of Shape. Therefore, if cattle were missing, as Rindal's proposed testimony implies, it must have been Shape's fault.

Shape has expressed that he will not testify. Acceptance of Rindal's version will result in more than mere hostility, it could preclude Shape's acquittal. It may also force Shape to exculpate himself. In my opinion, prejudice to both defendants will arise. *State v. Reiman*, 284 N.W.2d 860, 866 (S.D.1979).