James L. SCOTT, a/k/a James Larry
Smith, Petitioner and Appellant,

v.

Joseph CLASS, Warden South Dakota
State Penitentiary, Appellee.

No. 18852.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1995.

Decided May 24, 1995.

Timothy J. Langley, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Patricia J. Froning, Asst. Atty. Gen., Pierre, for appellee.

SABERS, Justice.

James L. Scott, a.k.a. James L. Smith, (Scott), was convicted of First Degree Robbery for stealing a woman's purse. Scott filed a writ of habeas corpus for ineffective assistance of counsel and for other errors he claimed denied him due process. The habeas court found that trial counsel was competent and that Scott failed to show any due process errors. We affirm.

### FACTS

On March 7, 1991 at approximately 8:20 p.m., Connie Strozdas (Strozdas) parked her car in the parking lot at the Empire Mall in Sioux Falls, S.D. She was checking her cash and checkbook balance when she noticed a car suddenly park near her. Apparently, Scott, Erick D. Jones, and a woman were in the car. She turned off the dome light in her car and began walking toward the department store when she heard a male voice whisper: "Hey there baby." She became frightened and began walking "very fast" toward the store.

Strozdas stated that Jones "grabbed my arm and whipped me around and started tearing at my purse." She pulled the purse toward herself. She saw other people in the parking lot and began screaming for help. Robert and Betty Natz observed the struggle from approximately seventy five feet away. Mr. Natz observed one female and two

males. He described both males as non-white. Mrs. Natz described the two males as possibly black. Strozdas' purse handles then broke. Jones struck her with his fist, breaking her nose and sending her to the ground. While Strozdas was on the ground, she saw Jones enter a car and she memorized the license plate number.

In the early morning of March 9, 1991, a Washington State patrolman observed a car speeding 75 to 85 miles per hour. He pulled up alongside the vehicle. As he did so, the car decelerated and swerved over the lane divider. The officer reported the license plate number and the car was reported stolen from Kansas City. The patrolman turned on his squad car lights and attempted to stop the car. He pursued the vehicle at speeds of 95 to 120 miles per hour. The high speed chase lasted 70 miles. He requested additional backup and a spike strip to be laid on the road. The car hit the strip and its front tire deflated.

Three passengers were in the car. Jones, Scott and a woman named Marin Bird Song. The three were arrested for felony eluding and possession of stolen property—the car. Inside Bird Song's purse were Strozdas' driver's license, checkbook, social security card, and other identification. A photographic lineup of eight dark-skinned men was prepared for Strozdas. It included photos of Jones and Scott. Strozdas identified Jones' photo as "very familiar." An extradition warrant was issued and Jones and Scott were returned to South Dakota.

The two were tried together and were found guilty of First Degree Robbery. Scott was sentenced to 25 years in the State Penitentiary. We affirmed on direct appeal. *State v. Smith*, 494 N.W.2d 390 (S.D.1992).

At the habeas hearing, State called the prosecutor who tried the case. Scott testified at the hearing that he had worn a prison uniform throughout the trial, had never been charged with a crime in the state of Washington and that closing argument by trial counsel was improper. The habeas court found Scott was not denied due process nor given ineffective assistance.

## Ineffective Assistance of Counsel

Scott claims ineffective assistance due to several errors. He claims that the sum of these errors amounts to ineffective assistance. We have adopted the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance of counsel claims. *Mitchell v. Class*, 524 N.W.2d 860, 862 (S.D. 1994) (citing *Luna v. Solem*, 411 N.W.2d 656, 658 (S.D.1987)). First, Scott must prove that his trial counsel's performance was deficient. *Id*. He must show that trial counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id*. Secondly, he must show that the deficient performance "prejudiced the defense" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id*. The reasonableness of trial counsel's action is evaluated from trial counsel's perspective at the time the alleged error occurred. *Id*.

Prejudice exists where "there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.; see Lockhart v. Fretwell*, 506 U.S. ——, —— – ——, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) (defendant must show not only that outcome would have been different but that counsel's errors were so serious as to deprive him of a fair trial).

### 1. Motion to Sever trials

Scott claims trial counsel did not effectively move to sever his trial and Jones. On July 25, 1991, Scott's trial counsel filed a motion for severance of the defendants under SDCL 23A–11–2. Trial counsel also filed an affidavit in support of the motion. Jones' counsel renewed the motion to sever the trial after opening argument indicated the two defenses were hostile toward one another. Scott claimed to be an innocent bystander. Jones' counsel argued Scott was "pointing the finger at [Jones] ... [and Jones] is being prosecuted not only by the prosecuting attorney but also by [Scott's trial counsel.]" Jones' counsel asked for a mistrial because of

the jury selection and for severance. Scott's trial counsel did not add anything further. The prosecutor argued that defendants must make an affirmative showing on a motion for severance before trial and that they failed to do so. The trial court denied the motions. Trial counsel raised this issue on direct appeal and we affirmed the trial court. *Smith*, 494 N.W.2d at 390.

■ We have held that "[w]here substantially the same issue was raised on direct appeal as in habeas review, 'the principle of res judicata is applicable to proceedings upon habeas corpus.'" *Stumes v. Delano*, 508 N.W.2d 366, 370 (S.D.1993) (quoting *Miller v. Leapley*, 472 N.W.2d 517, 519 (S.D.1991)). Scott claims the severance issue must be addressed on habeas as to the ineffective assistance claim. We agree. However, the severance of trials is a matter within the trial court's discretion. *State v. Shape*, 517 N.W.2d 650, 655 (S.D.1994). "[T]he law favors joint trial for reasons of judicial economy." *Id.* at 655 (citation omitted). Scott must show a "substantial prejudice which amounts to a denial of a fair trial." *Id.*

> To cause the type of prejudice that prevents co-defendants from obtaining a fair trial, the defenses must be more than merely antagonistic. They must conflict to the point of being irreconcilable and mutually exclusive so that acceptance of one defendant's defense will preclude the acquittal of the other defendant.

*Id.* (citation omitted).

Scott's trial strategy was that there was not any identification of him as the other "dark-skinned" male at the crime scene. Scott's defense is not mutually exclusive from Jones's defense of mistaken identification.

In *State v. Andrews*, 393 N.W.2d 76, 79 (S.D.1986), we faced a similar challenge to the trial court's refusal to sever the trial.

> It is not enough to allege that evidence presented against his codefendants would tend to cumulate prejudicially against him,

nor is it enough for him to demand severance because he did not participate in the alleged crime as actively as did his codefendants.

*Id.* (citation omitted).

We must determine if the jury is able to follow proper instructions to keep separate and appraise evidence relevant to each defendant in a single trial of codefendants. *Id.* (citation omitted). "Admission of evidence against only one of several defendants does not on its own create sufficient prejudice to justify reversal when proper limiting instructions are given to the jury." *Id.* (citations omitted). Scott has not shown that the proper instructions were not given nor that the jury did not follow them. The habeas court found that Scott failed to show trial counsel's performance was deficient or prejudicial. Scott has not shown this finding to be error.

### 2. Failure to raise issue of Probable Cause

■ Scott claims trial counsel did not object to lack of probable cause for his arrest in the state of Washington. Scott's trial counsel did join in Jones' motion to suppress evidence seized due to the stop of the car in Washington. The trial court held an evidentiary hearing on the motion. The officer testified that he observed the car speeding and travelling across the lane divider. A check on the license plate revealed the car was stolen. After the officer turned on his lights, he pursued the car at speeds of 95 to 120 miles per hour. The trial court denied the motion, finding that the officer had reasonable suspicion to stop the car and to search it incident to arrest.[1] Issues involving probable cause for searches and seizures may not be litigated collaterally in habeas proceedings. *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). Because this issue was raised in the trial court, it may not be reviewed on the merits during habeas review.[2] *Willett v.*

---

1. Scott's trial counsel made a motion to quash the grand jury indictment for insufficient evidence and for not meeting the minimum standard for showing probable cause. SDCL 23A–8–3(3). She filed affidavits in support of the motion and argued that the State lacked probable cause at the motion hearing.

2. A warrant was issued and forwarded to the state of Washington for Scott's return to South Dakota. Scott claims there must be probable cause to issue extradition warrants. The grand jury found probable cause, indicting him for robbery, then the warrant was issued.

*Lockhart,* 37 F.3d 1265, 1273 (8th Cir.1994). Additionally, the habeas court did not find trial counsel's performance deficient or prejudicial. Scott has not shown this to be error.

### 3. Failure to raise issue of Prison Garb

■ Scott claims his trial counsel should have objected to the prison uniform which he wore during the entire trial. Trial counsel did not object at any time during the proceedings. "[T]he failure to make an objection to the court as to being tried in such clothes [prison uniform], for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v. Williams,* 425 U.S. 501, 512–13, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, *reh. denied* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976); *see U.S. v. Grady,* 997 F.2d 421, 424 (8th Cir.1993) (only inquiry is whether defendant was compelled to wear prison garb).

Scott testified at the habeas hearing that he wore the prison uniform throughout the trial. He states that his trial counsel never objected. However, he does not claim that he objected or even discussed his apparel with his trial counsel. In *Estelle,* 425 U.S. at 507–08, 96 S.Ct. at 1694–95, 48 L.Ed.2d 126, the United States Supreme Court reversed the grant of a writ of habeas corpus for a defendant wearing prison garb throughout his trial without objection. The Court noted:

[C]ourts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.... Courts have therefore required an accused to object to being tried in jail garments, just as he must invoke or abandon other rights.

*Id.* (citations omitted).

Regarding trial counsel's failure to object to the garb, the Court noted that the "Court has not ... engaged in this exacting analysis with respect to strategic and tactical decisions, even those with constitutional implications, by a counseled accused." *Id.* at n. 3 (citations omitted). This rule should control here since there was an attorney and no showing of compulsion.

The habeas court found that Scott had not shown trial counsel's performance was deficient or prejudicial. *See Mitchell,* 524 N.W.2d at 862. Scott has not shown this to be error.

### 4. Failure to Object to Alleged Prior Bad Act Evidence

■ Scott claims the Prosecutor introduced prior bad act evidence by referring to a charge of burglary and his trial counsel failed to object. The Prosecutor did refer to "burglary" charge during his questioning as follows:

PROSECUTOR: Was one of the reasons that your [Washington] prosecutor didn't follow through with the charges was because they had him charged with *burglary* in South Dakota?

TRIAL COUNSEL: Objection, speculation.

JONES' COUNSEL: Objection, speculation and hearsay.

THE COURT: Sustained. He wouldn't know that.

The Prosecutor did refer to "burglary" charge when it was likely he meant "robbery." The habeas court found trial counsel's performance was not deficient and Scott failed to show any prejudice. *See Mitchell,* 524 N.W.2d at 862. Scott has failed to show this was error.

### 5. Peremptory Challenges

■ Scott claims trial counsel was ineffective for failure to adequately object to the allotted number of peremptory challenges granted by the trial court. Jones and Scott were given 11 peremptory challenges

together. Counsel for both requested additional peremptory challenges and objected to the denial. All eleven peremptory challenges were used. Under SDCL 23A–20–20, "[i]n all other felony cases [including first degree robbery], the prosecution and the defense each have ten peremptory challenges." The trial court gave each side eleven peremptory challenges, the extra one for the alternate juror.

> SDCL 23A–20–22 provides:
>
> If there is more than one defendant a court may, upon good cause shown, allow the parties additional challenges and permit them to be exercised separately or jointly, as it, in its discretion, believes necessary and proper.

We look at the statute as a whole, as well as enactments relating to the same subject when determining the intent of a statute. *Kayser v. S.D. State Elec. Com'n*, 512 N.W.2d 746, 747 (S.D.1994) (citation omitted). "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." 2A Sutherland, *Statutes and Statutory Construction*, § 46.05 (Singer ed., 5th ed. 1992). "[I]t is not proper to confine interpretation to the one section to be construed." *Id.* When read together, SDCL 23A–20–20 and 22 provide that "the defense" shall receive ten peremptory challenges in a joint trial for first degree robbery unless the trial court, in its discretion with good cause shown, chooses to permit additional challenges.

The habeas court found that trial counsel's performance was not deficient and that Scott failed to show prejudice. *See Mitchell*, 524 N.W.2d at 862. Scott has not shown prejudice or that trial counsel's objection was deficient.[3]

## Due Process of Law

Scott claims he was denied due process of law which deprived him of a fair trial on three issues.

### 1. Judicial Bias

■ Scott claims he was denied due process of law because of the trial court's failure to grant a mistrial for judicial bias. Although he has not shown any actual bias, Scott claims an "appearance of judicial bias" exists. On the final day of trial, Judge Srstka received an invitation to attend an engagement party for the victim and her fiancé. The judge informed the parties that he had been an attorney for the victim's fiancé. Trial counsel moved for a mistrial. Judge Srstka denied the motion because he was not attending the party.

"The opportunity to disqualify a judge is a statutory, . . . and not a constitutional right, except as it may be implicit in a right to a fair trial." *State ex rel. Burns v. Erickson*, 80 S.D. 639, 647, 129 N.W.2d 712, 716 (S.D. 1964) (citation omitted). Where defendant makes a statutory argument for judicial recusal, we have upheld the trial judge's refusal to recuse himself. *Mitchell*, 524 N.W.2d at 863, *State v. Robideau*, 262 N.W.2d 52, 54 (S.D.1978). In *Michigan v. Scotts*, 80 Mich. App. 1, 263 N.W.2d 272, 277 (1977), no error was shown for the trial judge's failure to disqualify himself where the victim's wife consulted the trial judge about a divorce while he was a practicing attorney. "Prejudice growing out of business, political, or social relations has been held insufficient to disqualify a judge." 46 Am.Jur.2d *Judges*, § 162. "[D]isqualification generally has not been mandated simply because a judge knew socially one or more of the parties, particularly in rural districts, where it is not at all

---

**3.** Scott also claims that trial counsel suggested in closing argument that even if Scott were at the crime scene, the jury must still find he participated in the crime. He testified that he gave express instructions that trial counsel was not to use the argument. The habeas court found that trial counsel's performance was not deficient or prejudicial. Scott has not shown this to be error.

Scott argues that trial counsel failed to object to "the faulty jury instruction on reasonable doubt." *See infra.* Scott also claims that coun-

sel failed to object to alleged judicial bias. Trial counsel did move for a mistrial when the trial judge's friendship with the victim's fiancé was disclosed. *See infra.*

For these claimed errors, the habeas court found that trial counsel's performance was not deficient and that no prejudice was shown. Scott did not present any evidence that trial counsel's performance was deficient nor prejudicial. He has failed to show the habeas court's finding to be error.

uncommon for a judge to have a friendly relationship with numerous members of the community[.]" *Id.*

Here, Judge Srstka was not aware of any conflict or that the victim was engaged to his prior client until he received the invitation to the engagement party, which he declined to attend. He promptly disclosed the facts to the defendants. The habeas court found that Scott "presented no testimony or evidence as to what actual prejudice arose from the claimed appearance of judicial bias on Judge Srstka's part." Scott has not shown this finding to be error.

### 2. Sentencing Judge Different from Trial Judge

█ Scott claims the sentencing judge was unfamiliar with the case. However, Judge Hurd, who replaced Judge Srstka after Scott requested Judge Srstka to step down, did rule on the pre-trial motions in the case. It appears he was aware of the necessary facts of the case. Scott also claims no transcript of the trial nor presentence investigation was available to Judge Hurd at the time of sentencing. A presentence investigation was waived. It appears that Scott has assumed several aliases and has a long criminal history. Unrefuted testimony at the habeas hearing revealed that a presentence investigation would hurt, rather than help, Scott. In addition, in *U.S. v. Whitfield,* 874 F.2d 591, 592 (8th Cir.1989), the sentencing judge did not preside over the trial and was not provided a transcript of the trial. Despite this, the Eighth Circuit Court of Appeals held that a successor judge in sentencing "is given broad discretion in determining whether he properly can perform his sentencing duties in a case [where] he did not preside at trial." *Id.* at 593 (citations omitted). Here, the habeas court found Judge Hurd "was very familiar with the facts of the case." Scott has not shown this finding to be error.

### 3. Jury Instruction on Reasonable Doubt

Scott claims that the reasonable doubt jury instruction unconstitutionally shifted the burden to defendants. In *Victor v. Nebraska,*

511 U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583, 591 (1994), the United States Supreme Court held:

> [S]o long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, ... the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.

*Id.* (citations omitted).

"[T]aken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Id.* (citations omitted); *see State v. Fast Horse,* 490 N.W.2d 496, 499 (S.D.1992) (citation omitted) ("[J]ury instructions are adequate when, *considered as a whole,* they give the full and correct statement of the law applicable to the case.") (emphasis in original).

█ Scott claims the last phrase of the jury instruction impermissibly shifted the burden to him. The last phrase states that if the jury finds a "real possibility they are not guilty, you must give them the benefit of the doubt and return a verdict of not guilty." This instruction was modeled after the Federal Judicial Center's Pattern Criminal Jury Instructions, No. 21. It has its supporters. "This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly." *Victor,* 511 U.S. at ——, 114 S.Ct. at 1253, 127 L.Ed.2d 583 (Ginsburg, J. concurring in part and concurring in the judgment). The habeas court concluded "[i]f there was any prejudice it was to the State." Scott has not shown this conclusion to be error.

We affirm.

MILLER, C.J., and AMUNDSON and KONENKAMP, JJ. *concur.*

GILBERTSON, J., not having been a member of the court at the time this case was submitted, did not participate.