#25951-a-SLZ

**2011 S.D. 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

LUCAS WAUGH,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
MELLETTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK BARNETT
Judge

* * * *

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                         and appellee.

BRAD A. SCHREIBER
KRISTEN N. BARRY of
The Schreiber Law Firm, Prof. LLC
Pierre, South Dakota                      Attorneys for defendant
                                         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 03, 2011

OPINION FILED **11/02/11**

#25951

ZINTER, Justice

[¶1.] Lucas Waugh was charged with the attempted rape of Vicki Stroup and the rape of C.B., a minor (Minor). The incidents occurred one after the other within walking distance of each other. The circuit court joined the cases for trial, and a jury found Waugh guilty of both offenses. Waugh appeals joinder and the sufficiency of evidence to support the convictions. We affirm.

*Facts and Procedural History*

[¶2.] Both incidents occurred in the early morning hours of September 23, 2009, in White River. After finishing work on September 22, Stroup and her friend, June Becker, drank a few beers at Stroup's home. Later, Stroup's nephew drove Stroup, Becker, and others including Waugh to a bar. Stroup was acquainted with Waugh's mother. Stroup also knew Waugh, but she did not interact with him that evening. Stroup's nephew subsequently drove Stroup and Becker back to Stroup's home. Becker stayed at Stroup's for a short time and then Becker went home. Soon thereafter, Stroup went to bed, leaving the kitchen light on.

[¶3.] Sometime before 4:11 a.m., while Stroup was sleeping, Waugh entered Stroup's home and bedroom without her knowledge or permission. Stroup awoke to something poking the upper-inside of her thigh, near her vagina. Stroup's sweatpants and underwear had been pulled down. Stroup observed Waugh standing next to her bed holding his penis. Stroup immediately exclaimed: "What the f*** are you doing" and that she was calling the police. Stroup went to the kitchen, opened her cell phone, and observed that it was 4:11 a.m. She immediately called 911. While Stroup was on the phone, Waugh walked into the kitchen, he

-1-

looked directly at Stroup, and he said her name. He then flipped up the hood on his sweatshirt and walked out the door.

[¶4.]        The incident involving Minor occurred shortly thereafter within walking distance of Stroup's home. Earlier in the afternoon of September 22, Minor, a sixteen-year-old, left school early and went to her friend L.D.'s house. At the time, L.D. and Waugh were dating. Waugh was at L.D.'s home periodically throughout that afternoon and evening. Waugh, L.D., and Minor were all drinking. Minor decided to stay overnight with L.D. L.D. testified that Waugh and Minor were flirting that night. When Minor fell asleep, L.D. was sitting next to Minor on the bed and Waugh was on a nearby couch.

[¶5.]        Minor later awoke to find Waugh lying on top of her with his penis inside her vagina. Her shorts and underwear had been pulled down. Minor said, "I'm not L.D." Waugh replied, "I know." Minor testified that Waugh hit her, bruising her face and causing a bump on her head. Waugh also placed his hand over Minor's mouth. Minor testified that it then "got all black" (apparently losing consciousness), and when she woke up, no one else was in the room. Minor dressed, used the restroom, and went home. L.D. testified that she heard the front door shut around 4:30 a.m. Minor called the police and reported the incident from her home.

[¶6.]        The sheriff and a deputy responded to Stroup's call first. The deputy interviewed Stroup and searched Stroup's home, while the sheriff searched for Waugh. The deputy found an item on Stroup's bedroom floor that belonged to Waugh. After completing the investigation at Stroup's home, the deputy met with the sheriff.

[¶7.]     Around 5:30 a.m., while the sheriff and deputy were still searching for Waugh, they received the report of the Minor incident at L.D.'s home. When the officers arrived at L.D.'s home to investigate, Waugh ran from L.D.'s home and eluded the officers. Later that morning, a relative brought Waugh to the police station.

[¶8.]     Minor was examined at a hospital, and the sheriff collected a penile swab from Waugh. Examination of the penile swab disclosed the presence of semen and DNA profiles matching Minor and Waugh.

[¶9.]     The State filed separate complaints for the Stroup and Minor incidents. Regarding Stroup, Waugh was charged with first-degree burglary, aggravated assault, and attempted second-degree rape. Regarding Minor, Waugh was charged with first-degree burglary, aggravated assault, and second-degree rape. At the conclusion of the preliminary hearing involving Stroup, the circuit court dismissed the aggravated assault charge. At the conclusion of the preliminary hearing involving Minor, the court dismissed the charges of aggravated assault and first-degree burglary. Waugh pleaded not guilty to the remaining charges of rape (involving Minor), attempted rape (involving Stroup), and first-degree burglary (involving Stroup).

[¶10.]     Following the circuit court's joinder of the charges for trial, a jury found Waugh guilty of the rape of Minor and the attempted rape of Stroup, but not guilty of first-degree burglary of Stroup's home. Waugh appeals, arguing that the cases were improperly joined and that there was insufficient evidence to support the rape and attempted rape convictions.

## Joinder of Informations

[¶11.]    Waugh contends that joinder was improper because the victims and some of the details of each incident were dissimilar.  A circuit court's decision to join charges is reviewed under an abuse of discretion standard.  *State v. Thompson*, 1997 S.D. 15, ¶ 14, 560 N.W.2d 535, 538.  "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence."  *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 12, 756 N.W.2d 363, 370.

[¶12.]    Joinder of informations is permitted where the offenses "could have been joined in a single . . . information."  SDCL 23A-11-1.  Offenses may be joined in a single information under the following circumstances.

> Two or more offenses may be charged in the same . . . information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

SDCL 23A-6-23.  "[The] statute contains three tests which permit joinder of offenses."  *State v. Shape*, 517 N.W.2d 650, 654 (S.D. 1994).  "The first test allows joinder if the offenses were of the same or similar character."  *Id*.  "The second test allows for joinder of offenses which are based on the same act or transaction."  *Id*. at 655.  "The third test allows joinder if the charges are based on acts which constitute a common scheme or plan."  *Id*.

[¶13.]    "If the requirements of SDCL 23A-6-23 for joinder are met, then the burden of proof falls to the party opposing joinder to establish sufficient prejudice to justify severance of the joined counts."  *State v. Sabers*, 442 N.W.2d 259, 263 (S.D.

1989) (citing SDCL 23A-11-2). The quantum of prejudice that must be shown is high.

> Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a defendant charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order.

*State v. Dixon*, 419 N.W.2d 699, 703 (S.D. 1988). "A showing of prejudice requires more than a showing of a better chance of acquittal at a separate trial." *United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir. 1978). The higher showing is required to offset the purpose of joinder, judicial efficiency. *Dixon*, 419 N.W.2d at 703.

[¶14.] Furthermore, "a trend is developing that 'the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense[.]'" *Id.* at 702 (quoting 1 Wright, Federal Practice and Procedure, *Joinder of Offenses & Defendants*, § 143 (1982)) (citing *State v. Hoffman*, 106 Wis. 2d 185, 316 N.W.2d 143 (1982); *State v. Hall*, 103 Wis. 2d 125, 307 N.W.2d 289 (1981); *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984)). "When evidence of one crime is admissible in the trial of another crime, . . . there is no prejudice in trying the two charges at the same time." *United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001) (analyzing the federal-rule counterparts to South Dakota's joinder and prejudice statutes).

[¶15.] In this case, the circuit court granted State's motion for joinder because the court found that the offenses were similar and parts of a common scheme. With respect to similarity, the circuit court observed that both incidents

occurred at approximately the same time in bedrooms that were within walking distance of each other. Waugh and the victims were also known to and recognized by each other, and both victims had been with Waugh that evening shortly before the assaults. The court finally observed that both victims were awakened in bed to find their pants or shorts and undergarments pulled down.

[¶16.] There were also additional similarities. Waugh knew the location of Stroup's home and was in L.D.'s home periodically throughout the evening. Waugh had social contact with both Minor and Stroup shortly before the incidents. During that contact, all three parties were drinking in the company of each other. Considering the connection of all three parties, the closeness of the time and location of the offenses, and the similar manner of executing the sexual assaults, the circuit court did not abuse its discretion in finding the acts to be of a similar character. We have affirmed joinder "where separately charged offenses are closely related in location and manner of execution[.]" *Thompson*, 1997 S.D. 15, ¶ 16, 560 N.W.2d at 539.

[¶17.] Moreover, we see no undue prejudice because the evidence of each incident could have been admitted in the trial of the other. Other acts evidence is admissible in rape cases to negate the defense of consent, and to prove intent, motive, common plan or design. SDCL 19-12-5 (Rule 404(b)) (providing that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive . . ., intent . . ., [or] plan, . . ."); *see also State v. White*, 538 N.W.2d 237, 243-44 (S.D. 1995) (affirming the admission

of other acts evidence under SDCL 19-12-5 (Rule 404(b)) to negate the defense of consent in a rape case).

[¶18.]    In this case, evidence of each incident would have been admissible in the trial of the other under the common plan exception to SDCL 19-12-5 (Rule 404(b)). As previously noted, Waugh knew the location of both homes; Waugh had social contact with both women immediately before the incidents; the rape of Minor occurred shortly after the unsuccessful attempt to rape Stroup; and, Waugh was aware that both Minor and Stroup had been drinking that evening. From this evidence, jurors could have found that Waugh had a common plan to sexually assault victims who Waugh knew had been drinking that evening.

[¶19.]    Additionally, Waugh's defense for each incident made each act admissible in the trial of the other under the intent and motive exceptions in SDCL 19-12-5 (Rule 404(b)). With respect to Stroup, Waugh's defense was that he did not attempt to commit rape because he had no specific intent to rape Stroup. He contended that he committed no direct act toward completion of a rape: he was merely standing in her bedroom fondling his genitals. With respect to Minor, Waugh conceded intent to have sexual intercourse, but contended that it was consensual.

[¶20.]    Therefore, evidence of Waugh's non-consensual entry of Stroup's home and his non-consensual removal of Stroup's pants just before the Minor incident would have been admissible to negate Waugh's defense that his sexual intercourse with Minor was consensual. Similar acts evidence may be admitted to negate the defense of consent. *White*, 538 N.W.2d at 244. And, the Minor incident involving

non-consensual intercourse occurring immediately after Waugh's failed attempt to have sex with Stroup would have been admissible in the Stroup trial to prove that he did intend to have sexual intercourse with Stroup. Similar acts are admissible to prove intent, motive, common plan or design in rape cases. *Id.* Concededly, the similarities in this case are not as great as those discussed in *White* and the other cases cited therein. However, the incidents in this case occurred one after the other shortly after Waugh had social encounters with both women who he observed drinking alcohol. We consider remoteness and similarity together when determining whether another crime, wrong, or act is admissible. *State v. Fisher*, 2010 S.D. 44, ¶ 28, 783 N.W.2d 664, 673. "[L]ess similarity may be required where the prior act is closer in time to the charged incident." *Id.* These incidents were closely related in time and were similar in many respects. We conclude that Waugh failed to establish unfair prejudice because the evidence of each incident would have been admissible in the trial of the other.

[¶21.] The two incidents in this case were closely related in time and location, and the incidents were similar considering Waugh's prior interaction with both women and the removal of their clothing while they were sleeping. Because there was evidence of similarity and common plan, and because there was insufficient evidence of unfair prejudice, the circuit court did not abuse its discretion in joining the charges for trial.

*Sufficiency of the Evidence*

[¶22.] Waugh contends that the evidence was insufficient to support the verdicts. "In determining the sufficiency of the evidence on appeal, our review is

limited to determining whether there is evidence in the record which, if believed by the fact finder, will sustain a finding of guilt beyond a reasonable doubt." *State v. Hanson*, 456 N.W.2d 135, 139 (S.D. 1990). "We must accept the most favorable inferences that can be drawn from the evidence in support of a verdict." *Id.* This Court does not "resolve conflicts in the evidence, assess the credibility of witnesses, or reevaluate the weight of the evidence." *State v. Corean,* 2010 S.D. 85, ¶ 53, 791 N.W.2d 44, 61. "No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *State v. Buchholz*, 1999 S.D. 110, ¶ 33, 598 N.W.2d 899, 905.

[¶23.]     With respect to the attempted rape of Stroup, an attempt to commit a crime occurs when one "does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration of that crime[.]" SDCL 22-4-1. "[T]o prove an attempt, the prosecution must show that defendant (1) had the specific intent to commit the crime, (2) committed a direct act toward the commission of the intended crime, and (3) failed or was prevented or intercepted in the perpetration of the crime." *State v. Reed*, 2010 S.D. 66, ¶ 7, 787 N.W.2d 1, 3. "The term 'act' presupposes some direct act or movement in execution of the design, as distinguished from mere preparation, which leaves the intended offender only in the condition to commence the first direct act toward consummation of his design." *Id.* ¶ 8. However, "it is not necessary that the last further act necessary to the actual accomplishment of the crime be taken to be a requisite to make an attempt[.]" *Id.*

[¶24.] Waugh argues that the State did not establish that Waugh had the specific intent to rape Stroup and that Waugh committed no direct act toward the commission of attempted rape.* We disagree. The jury heard evidence that Waugh entered Stroup's house shortly before 4:11 a.m. without her consent, entered her bedroom, repositioned Stroup at the end of her bed, removed her pants and underwear, and poked the inside of Stroup's upper thigh near her vagina. When she fully awoke, she observed Waugh in her presence by her bed holding his penis. Waugh's acts were overt sexual behavior sufficient for a reasonable trier of fact to have found that Waugh intended to rape Stroup.

[¶25.] With respect to the rape of Minor, Waugh argues that Minor consented to the sexual intercourse. "[C]onsent may be a defense [to rape] where there is evidence offered and received that the victim did indeed consent; however, that evidence would also have to utterly negate any element of force, coercion, or threat." *State v. Faehnrich*, 359 N.W.2d 895, 900 (S.D. 1984).

[¶26.] In this case, Minor testified that she did not consent and she wanted to scream but Waugh held his hand over her mouth. Minor also testified that Waugh physically hit her. Waugh argues that Minor's testimony was not credible, but we do not pass on the credibility of Minor's testimony. Moreover, Minor's testimony was corroborated by her physical injuries, including a bruise on her face and a bump on her head. A reasonable trier of fact could have found that the sexual intercourse was not consensual.

---

* Waugh also argues that Stroup's testimony regarding attempted rape is less than convincing, but we do not pass on the credibility of witnesses.

#25951

[¶27.] Affirmed.

[¶28.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON and WILBUR, Justices, concur.