#27843, #27844-a-SLZ
**2017 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

JEREMY JACOB GOODSHOT,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


MARK KADI of
Minnehaha County Office
 of the Public Advocate
Sioux Falls, South Dakota               Attorneys for defendant
                                        and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS
MAY 30, 2017
OPINION FILED **06/07/17**

ZINTER, Justice

[¶1.] Jeremy Goodshot was convicted of several offenses charged in two indictments. He appeals the circuit court's decision to join the indictments for trial. He also appeals an evidentiary ruling. We affirm.

*Facts and Procedural History*

[¶2.] On the morning of August 13, 2015, Kenny Maldonado-Molina was awakened by his dog barking outside, and he left his house with a handgun to investigate. He observed a man, later identified as Goodshot, holding a machete over his head. Because Goodshot walked towards Maldonado-Molina in a threatening manner, Maldonado-Molina displayed the gun and warned Goodshot to stay back. When Goodshot kept advancing, Maldonado-Molina fired two shots at the ground. Goodshot fled the scene in a vehicle, and Maldonado-Molina had his girlfriend call 911.

[¶3.] Responding police officers observed that a lug nut had been removed from a tire on one of Maldonado-Molina's vehicles, two bullet marks on the ground consistent with gunshots, and a trail of blood that led into the alley and abruptly stopped. The officers suspected that one of the gunshots had ricocheted and struck Goodshot.

[¶4.] While the officers were still questioning Maldonado-Molina, law enforcement received a report of a roll-over accident at a not-too-distant location. Witnesses reported that the driver ignored their offers for help and ran off while talking on a cell phone. One unknown witness reported that the driver may have possessed a gun. After arriving at the accident scene, officers found a machete, two

tire irons, and a credit card with Goodshot's name inside the vehicle. They also observed blood inside the vehicle and a trail of blood leading away from the vehicle. They further learned that the vehicle was owned by Goodshot's girlfriend.

[¶5.]    Goodshot immediately became the suspect in both incidents. Because law enforcement had received the report that Goodshot might be armed, a S.W.A.T. team was deployed to apprehend him. Goodshot was eventually found a short distance from where the S.W.A.T. team was searching. He was leaning against a fence with a string tourniquet on his leg.

[¶6.]    Later that evening, Debra Cummings, who lived in the area where Goodshot was apprehended, returned home and discovered that her house had been broken into. Her door was open, and she found a bloody dishcloth from her kitchen sink in a bedroom. She observed blood stains in several rooms throughout her house. She also found a glass with bloody handprints on her kitchen counter and a bloody fingerprint on a partially consumed bottle of soda inside her refrigerator. Subsequent fingerprint and DNA analysis matched the fingerprints and blood with Goodshot.

[¶7.]    On August 27, 2015, Goodshot was indicted for four offenses—aggravated assault, tampering with a motor vehicle, hit and run, and driving without a valid license—arising out of the incident at Maldonado-Molina's home and subsequent automobile accident . On December 16, 2015, Goodshot was indicted for second degree burglary arising out of the entry of Cummings's home.[1]

---

1.    It appears that the State waited to obtain the burglary indictment until after forensic testing was complete.

[¶8.] Shortly after returning the second indictment, the State moved to join both indictments for trial. Over Goodshot's objection, the court granted the motion because the "two indictments were of the same or similar character," the "charges occurred close in time, location, and manner," and the "alleged factual scenario [was] a common scheme or plan as it was all part of the res gestae of the course of events." The court further ruled that joinder would not "unduly prejudice" Goodshot and that "there were no overlapping elements that would prejudice" Goodshot.

[¶9.] Before trial, Goodshot filed a motion in limine to prevent the State from admitting evidence of the report that Goodshot may have possessed a gun after fleeing the vehicle. The circuit court denied the motion because the evidence was proffered only to explain why the S.W.A.T. team was deployed. After a four-day jury trial, Goodshot was convicted of all offenses. He appeals, arguing that the circuit court erred in joining the indictments and admitting evidence of the unknown bystander's report.

*Decision*

[¶10.] Goodshot first argues that joinder violated his constitutional right to a fair trial because joinder was improper and prejudicial. "A court may order two or more indictments . . . to be tried together if the offenses . . . could have been joined in a single indictment . . . ." SDCL 23A-11-1. "Two or more offenses may be charged in the same indictment . . . if the offenses charged . . . are based on . . . two

or more acts or transactions connected together . . . ." SDCL 23A-6-23.[2] "A circuit court's decision to join charges is reviewed under an abuse of discretion standard." *State v. Waugh*, 2011 S.D. 71, ¶ 11, 805 N.W.2d 480, 483.

[¶11.] Here, all of the charged offenses arose out of a connected series of events. Goodshot first attempted to remove tire rims from Maldonado-Molina's vehicle by removing a lug nut (tampering with a motor vehicle). This led to the confrontation with Maldonado-Molina (aggravated assault). Goodshot was wounded in the confrontation and fled the scene in a vehicle (driving without a license). While fleeing, he caused an accident and left the scene (hit and run). He then broke into Cummings's home, stole some property, and damaged her property in an apparent attempt to treat wounds sustained in the confrontation (burglary). Because all of the offenses were connected, they could have been joined in one indictment, and joinder of the indictments was proper. *See* SDCL 23A-6-23; *cf. State v. Bradley*, 2010 S.D. 40, ¶ 7, 782 N.W.2d 674, 677.

[¶12.] When joinder is proper under SDCL 23A-6-23, "the burden of proof falls to the party opposing joinder to establish sufficient prejudice to justify severance of the joined counts." *Waugh*, 2011 S.D. 71, ¶ 13, 805 N.W.2d at 483. "A showing of prejudice requires more than a showing of a better chance of acquittal at a separate trial." *Id.* ¶ 13, 805 N.W.2d at 484. The requisite showing of prejudice is

---

2. SDCL 23A-6-23 provides:

> Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

high in order "to offset the purpose of joinder, judicial efficiency." *Id.* "[W]hen evidence of one crime is admissible in the trial of another crime, . . . there is no prejudice in trying the two charges at the same time." *Id.* ¶ 14.

[¶13.] Goodshot fails to make a sufficient showing of prejudice. He merely alleges that the additional burglary charge portrayed him as a "bad person" and that joinder "diminished [his] ability to effectively raise separate defenses to each charge in the same case." However, joinder always involves some prejudice, as "a jury is likely to feel that a defendant charged with several crimes must be a bad individual who has done something wrong." *Id.* ¶ 13, 805 N.W.2d at 483-84. Moreover, Goodshot has failed to identify what his defenses were or explain how joinder diminished his ability to raise them. Finally, evidence of the offenses charged in the first indictment would have been admissible as res gestae or other-acts evidence in a trial on the burglary indictment to explain the circumstances of the burglary. *See State v. Dowty*, 2013 S.D. 72, ¶ 32, 838 N.W.2d 820, 830-31; *State v. Stark*, 2011 S.D. 46, ¶ 25, 802 N.W.2d 165, 173 ("The res gestae exception [to SDCL 19-19-404(b)] permits the admission of evidence that is 'so blended or connected' in that it 'explains the circumstances; or tends logically to prove any element of the crime charged.'" (quoting *State v. Wright*, 2009 S.D. 51, ¶ 55, 768 N.W.2d 512, 531)). Because joinder was proper and Goodshot failed to make a sufficient showing of prejudice,[3] the circuit court did not abuse its discretion in joining the indictments.

---

3. Goodshot also claims that the circuit court utilized the wrong test in determining whether he was prejudiced because it reasoned that none of the

(continued . . .)

[¶14.]     Goodshot next argues that the circuit court erred in admitting evidence of the unknown bystander's report that Goodshot may have possessed a gun. He contends that the evidence was irrelevant, inadmissible hearsay that was unduly prejudicial. The court ruled that the evidence was not hearsay because it was not being offered to prove the truth of the matter asserted. The court further ruled that the evidence was relevant and not prejudicial. "A trial court's evidentiary rulings are presumed to be correct and are reviewed under the abuse of discretion standard." *State v. Hannemann*, 2012 S.D. 79, ¶ 19, 823 N.W.2d 357, 362.

[¶15.]     The circuit court did not abuse its discretion in admitting evidence of the bystander report. First, the evidence was not admitted to prove that Goodshot possessed a gun. The evidence was introduced only to explain why a S.W.A.T. team was deployed to find and apprehend Goodshot. Because the evidence was relevant and was not introduced to prove the truth of the matter asserted, it was not hearsay. Second, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* SDCL 19-19-403. The State did not allege that Goodshot possessed a gun. On the contrary, several of the State's witnesses testified that Goodshot never possessed a gun. Therefore, there was no prejudice because the jury was well aware that Goodshot did not possess a gun. We conclude that the circuit court did not abuse its discretion in admitting this

---

(. . . continued)

elements of the charges overlapped. However, the circuit court did not rule that there were *no* overlapping elements. It ruled that there were "no overlapping elements of the charges *that would prejudice the defendant.*" (Emphasis added.) The court ultimately ruled that joinder would not "unduly prejudice the defendant," and as we have explained, Goodshot did not meet his burden of showing sufficient prejudice.

explanatory evidence. *See State v. Martin*, 2015 S.D. 2, ¶ 11, 859 N.W.2d 600, 605 (finding no abuse of discretion when circuit court admitted 911 report to explain the circumstances); *State v. Johnson*, 2009 S.D. 67, ¶ 21, 771 N.W.2d 360, 369 (finding no abuse of discretion when circuit court admitted out-of-court statements used to provide context for other admissible statements).

[¶16.] Affirmed.

[¶17.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.