#29449-a-JMK
**2022 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

  v.

ROBERT HAROLD LOESCHKE,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

CHRISTOPHER MILES of
Minnehaha County Public
  Defender's Office
Sioux Falls, South Dakota                          Attorneys for defendant and
                                                   appellant.


MARK VARGO
Attorney General

JONATHAN K. VAN PATTEN
Assistant Attorney General
Pierre, South Dakota                               Attorneys for plaintiff and
                                                   appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 10, 2022
OPINION FILED **09/14/22**

#29449

KERN, Justice

[¶1.] Robert Loeschke was indicted and subsequently tried in August 2020 for six counts of assault against his girlfriend, Melissa Greenwalt, arising out of two separate incidents. He was charged with one count of aggravated assault and two counts of simple assault arising from a stab wound inflicted on Greenwalt on February 20, 2019. He was also charged with one count of aggravated assault and two counts of simple assault arising from an assault with fists on June 17, 2018, which left Greenwalt with a broken jaw. The jury convicted Loeschke on the assault counts arising from the February 20, 2019 stabbing but acquitted him of the charges from the June 17, 2018 broken-jaw incident. Prior to trial, Loeschke had moved to sever the charges based on the dates of the offenses, but the court denied his motion. At trial, Loeschke objected on hearsay grounds to the admissibility of Greenwalt's statements contained in recorded phone conversations between Greenwalt and Loeschke while he was in jail. The circuit court overruled the objection and admitted the statements as context to aid the jury in understanding the conversation but gave the jury a limiting instruction. Loeschke appeals the circuit court's order denying his motion to sever and the admission of the challenged statements at trial. We affirm.

**Factual and Procedural Background**

[¶2.] On February 20, 2019, Greenwalt was stabbed in the abdomen at the trailer house in which she lived. Law enforcement responded to a 911 call reporting the stabbing, and Sioux Falls Police Department Officer Greg Logan was the first to arrive on the scene. Officer Logan observed Loeschke standing outside of the

-1-

residence with another male subject. Before Officer Logan entered the trailer, he talked with Loeschke who told him that he had been invited to the house by Greenwalt. According to Loeschke, at some point Greenwalt told him to leave but then told him to stay, and Loeschke said that what happened "was an accident." Once inside, Officer Logan observed Greenwalt lying on the kitchen floor with a stab wound to her abdomen with bodily material oozing from the wound. Greenwalt was transported by ambulance to the hospital for emergency surgery.

[¶3.] After her surgery, but while she was still hospitalized, Detective Maria Munkvold, with the Minnehaha County Sheriff's Office, spoke with Greenwalt and observed the injury to Greenwalt's abdomen. During this conversation, Greenwalt disclosed that she had previously been treated for a broken jaw. Greenwalt's medical records confirmed that she was treated for a broken jaw on June 17, 2018, caused by an assault, but refused to disclose the perpetrator.

[¶4.] During the investigation at the scene of the current incident, Officer Jason Burns observed, photographed, and collected a black knife with orange paracord wrapped around the handle that was located in the living room. Officer Burns also observed a black knife sheath laying on the ground in the driveway between the residence and Loeschke's car, which he photographed and collected as evidence. There was no blood trail or other physical evidence within or near the residence indicating where the assault occurred.

[¶5.] Law enforcement took Loeschke into custody and transported him to the Minnehaha County Law Enforcement Center, where he waived his Miranda rights prior to submitting to a taped interview by Detective Adam Zishka. During

the interview, Loeschke explained that he was in a romantic relationship with Greenwalt and that they had attempted to break up the weekend before the stabbing incident but were still hanging out together. He claimed that he and Greenwalt were outside the residence on February 20 when he slipped and fell. He explained that Greenwalt bent over to help him up and must have stabbed herself in the process of bending over.

[¶6.] Loeschke alternatively claimed that Greenwalt had slipped and fallen and must have stabbed herself then. However, Loeschke also stated that "if Melissa said I did it I must have" and that "if I did it I will pay the consequences." Loeschke claimed that he forgets things or "blacks out" sometimes when he gets angry, and that this was why he could not remember the details of how Greenwalt was stabbed. He reported picking up the knife sheath from the deck attached to the residence at some point after the stabbing and placing it in his car, but law enforcement found the knife sheath on the ground between the car and the residence. He also informed Detective Zishka that Greenwalt would probably not want to press charges against him. When asked, Loeschke admitted to having broken Greenwalt's jaw about a year prior to the stabbing by punching her, but he qualified the admission by stating that he tried to pull the punch back at the last minute and "barely punched her."

[¶7.] The State submitted the knife for forensic testing, which revealed blood on the knife blade matching Greenwalt's DNA. The testing also showed the presence of at least two DNA profiles on the knife handle, but the forensic lab was

unable to isolate the profiles on the handle to determine if either of them matched Loeschke, Greenwalt, or someone else.

[¶8.]        On February 27, 2019, Loeschke was charged in a 27-count indictment alleging eleven counts of aggravated assault and sixteen counts of simple assault. The charges stemmed from alleged incidents perpetrated against Greenwalt occurring on June 17, 2018, resulting in Greenwalt's broken jaw; February 15, 2019, involving a punch to her face; February 17, 2019, for punching and striking her with a metal pole; and the February 20, 2019 stabbing.[1]  While in jail awaiting trial and under a no contact order with Greenwalt, Loeschke called her multiple times from the jail.  During some of these calls, all of which were recorded, Loeschke and Greenwalt spoke about Greenwalt in the third person and at times pretended that Loeschke was speaking to someone named "Melanie" instead of to Greenwalt.  At trial, the State offered portions of two of these phone calls into evidence.

[¶9.]        Loeschke filed several pretrial motions including a motion to sever the 27 counts of the indictment and permit three separate jury trials.  Loeschke claimed that separate trials were necessary in order to properly address the charges arising from the alleged assaults, all of which occurred on different dates.  At a pretrial hearing on this motion, the circuit court considered the briefs and arguments of the parties and the grand jury transcripts underlying the indictment.  The court found

---

1.    The State also filed a part II information against Loeschke alleging he was a habitual offender, with prior felony convictions for intentional damage to property in 2008 in South Dakota and terroristic threats in 2011 in Minnesota.

that based on this information,[2] Loeschke and Greenwalt had been in a romantic relationship since April 2018, and that Loeschke had allegedly committed multiple acts of abuse and violence against Greenwalt prior to the stabbing. These acts included breaking Greenwalt's jaw in June 2018, punching Greenwalt in the face and repeatedly threatening to kill her while driving with her as a passenger in a car on February 15, 2019, and striking Greenwalt on her hand and back with a metal pole on approximately February 17, 2019.

[¶10.] After hearing the arguments of the parties, the court discussed the three-part test for joinder set forth in *State v. Solis*, 2019 S.D. 36, ¶ 19, 931 N.W.2d 253, 258, and denied Loeschke's motion to sever. The circuit court later entered findings of fact and conclusions of law and an order denying the motion.

[¶11.] Loeschke was tried on January 22, 2020, on the charges in the indictment. Prior to trial, the State dismissed six of the counts in the indictment. However, midway through the trial, the circuit court declared a mistrial because of the introduction of a "faulty redaction of a recorded video" of Loeschke's statement to law enforcement. Greenwalt was present before and during this first trial and had intended to testify on behalf of the State. However, the mistrial occurred before she was called as a witness.

[¶12.] After the mistrial, Loeschke's case was brought to trial a second time on August 2, 2020. This time, the State was unable to locate Greenwalt to subpoena her, and she did not appear for trial. Therefore, the State dismissed all but six of the remaining charges, which included those stemming from the June 17,

---

2. The record does not contain the grand jury transcripts.

2018 assault resulting in Greenwalt's broken jaw (one aggravated assault charge and two simple assault charges) and the February 20, 2019 stabbing (one aggravated assault charge and two simple assault charges). The second trial focused on the facts surrounding these two incidents, and the State did not offer evidence regarding other prior assaults and abuse.

[¶13.]     On the second day of trial, Loeschke moved to exclude, on hearsay grounds, excerpts from two of the phone calls between Greenwalt and Loeschke that occurred while he was in jail and that the State planned to offer into evidence. The circuit court overruled Loeschke's objection, granted Loeschke a standing objection, and admitted the recordings which were later played for the jury.

[¶14.]     During the trial, the State called the following witnesses: Dr. Matthew Nipe, the emergency room physician who treated Greenwalt's broken jaw on June 17, 2018; Officers Logan and Burns, who responded to the stabbing incident on February 20, 2019; Detective Monkvold, who interviewed Greenwalt and investigated the stabbing and her jaw injury; Detective Zishka, who conducted the videotaped interview with Loeschke after the stabbing that was admitted and played for the jury; and Amber Bell, who performed the forensic testing on the knife seized from the trailer. After the State rested its case, Loeschke moved for a judgment of acquittal and the court denied his motion. Loeschke did not call any witnesses.

[¶15.]     The jury found Loeschke guilty of the three charges involving the February 20, 2019 stabbing and not guilty of the three charges arising from Greenwalt's broken jaw on June 17, 2018. The circuit court imposed sentence only

on the aggravated assault charge from the February 2019 stabbing, sentencing Loeschke to fifteen years in prison with five years suspended.[3] The court ordered that this sentence run consecutively to a sentence imposed on Loeschke in a separate criminal file for witness tampering and violating the no contact order with Greenwalt.

[¶16.] Loeschke appeals, raising two issues, which we restate as follows:

1. Whether the circuit court erred in denying Loeschke's motion to sever counts of the indictment.

2. Whether the circuit court erred in admitting portions of the recorded phone calls made by Loeschke to Greenwalt.

**Standard of Review**

[¶17.] "The standard of review with regard to severance due to prejudicial joinder of offenses is whether the trial court abused its discretion by denying the motion for severance." *State v. Shape*, 517 N.W.2d 650, 654 (S.D. 1994). "Such an abuse of discretion arises only where the party requesting severance of joined counts can make a clear showing of prejudice to substantial rights." *Id.* (internal quotation marks omitted) (citation omitted). Similarly, a circuit court's ruling on the admissibility of evidence is reviewed under the abuse of discretion standard. *Johnson v. O'Farrell*, 2010 S.D. 68, ¶ 12, 787 N.W.2d 307, 311–12. An "admission of evidence in violation of a rule of evidence is an error of law that constitutes an

---

3. Loeschke was arraigned and entered an admission to the part II information at the beginning of his sentencing hearing on September 14, 2020. He waived his right to a 48-hour delay prior to imposition of sentence and requested that sentence be imposed.

abuse of discretion." *Dubray v. S.D. Dep't of Social Servs.*, 2004 S.D. 130, ¶ 8, 690 N.W.2d 657, 661 (citation omitted).

## Analysis and Decision

*Motion to Sever*

[¶18.]      In his motion to sever, Loeschke advanced two arguments.  First, he asserted that counts charged in his indictment were improperly joined.  Second, he asserted that under SDCL 23A-11-2, he was entitled to relief from joinder via a severance because he would be prejudiced if the charged offenses were tried together.

*Appropriateness of Joinder under SDCL 23A-6-23*

[¶19.]      Multiple offenses may be joined in a single indictment as outlined in SDCL 23A-6-23, which provides that:

> Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

As set forth above, there are "three separate tests which permit joinder of offenses." *Solis*, 2019 S.D. 36, ¶ 19, 931 N.W.2d at 258 (citation omitted).  The first test, involving offenses with the same or similar circumstances, permits joinder "where separately charged offenses are closely related in time, location, and manner of execution." *Id.* ¶ 20, 931 N.W.2d at 259 (quoting *State v. Waugh*, 2011 S.D. 71, ¶ 12, 805 N.W.2d 480, 483).  When the "separately charged offenses are closely related in location and manner of execution," the close in time requirement "has been broadly construed." *Id.*  The second test asks whether the charges are "based

on the same act or transaction" (neither party is arguing that joinder is appropriate under this factor); and the third test examines whether the charges constitute "parts of a common scheme or plan." *See* SDCL 23A-6-23.

[¶20.] Loeschke had moved to sever the counts prior to the first trial and prior to the State dismissing any of the counts in the 27-count indictment. In denying Loeschke's motion, the circuit court considered the three tests in relation to whether the charges were properly joined, stating:

> I went through the three tests. I think joinder is appropriate. I think that joinder is necessary not just for efficiency purposes but because I really do think this kind of goes together as a package. Some of them are very close in time. Others are not. All of them involve the same victim. Some involve the same weapon or alleged weapon. So I think there are different ways to fit all 27 counts into the 3 tests, but I do think that the most helpful test[s] for the state are, you know, No. 1 and 3 effectively.

[¶21.] Loeschke contends that the circuit court erred in concluding that joinder of the offenses in the indictment was proper under these two grounds. Regarding joinder for the offenses being of the same or similar character, Loeschke argues that the offenses were too far apart in time to satisfy this criterion, as the time span between the June 17, 2018 assault and the February 20, 2019 assault "amounts to a total of 248 days, or 8 months and 3 days." Loeschke also points out that the two assaults took place at different locations (the June assault occurring in a storage shed and the February assault occurring at Greenwalt's residence) and were not alleged to have been committed in the same manner (a fist was used in the June incident and a knife in the February stabbing). Additionally, Loeschke contends that joinder was inappropriate under the common scheme or plan test

because "the significant period of time that occurred between the alleged offenses categorically removes them from the . . . 'common scheme or plan' framework." Loeschke further argues that the offenses did not have similar features reflecting a common scheme or plan, particularly given that he intended to show at trial that the June assault was an act of self-defense, while the February assault was an accident.

[¶22.]     In response, the State notes that, as to the same or similar character test, the circuit court only found that the two February charges (offenses committed on February 15 and dismissed shortly before trial) were close in time, and that because the remaining June and February offenses are "all of the same type against the same victim[,]" they satisfy the same or similar character test.  The State argues that because of the language in *Solis* stating that whether the events were closely related in location and manner of execution has been "broadly construed[,]" the "additional factors of time and place are to be viewed as permissive" or "relevant, but not necessary, conditions."  Regarding the common scheme or plan test, the State contends that *Solis*, 2019 S.D. 36, ¶ 25, 931 N.W.2d at 260, and *State v. Phillips*, 2018 S.D. 2, ¶ 16, 906 N.W.2d 411, 415, establish that an ongoing relationship involving domestic abuse between the same defendant and same victim, as is the case here, constitutes a pattern and plan to commit domestic abuse.

[¶23.]     A common scheme of domestic abuse may be shown by evidence that would be admissible to show something other than propensity under SDCL 19-19-

404(b) (Rule 404(b)).[4]  *Solis*, 2019 S.D. 36, ¶ 23, 931 N.W.2d at 259.  In terms of

Rule 404(b), it is well established that

> Domestic abuse often has a history highly relevant to the truth-finding process.  When an accused had a close relationship with the victim, prior aggression, threats or abusive treatment of the same victim by the same perpetrator are admissible when offered on relevant issues under Rule 404(b).  The rationale for admissibility is that an accused's past conduct in a familial context tends to explain later interactions between the same persons.

*Solis*, 2019 S.D. 36, ¶ 23, 931 N.W.2d at 259 (quoting *State v. Laible*, 1999 S.D. 58,

¶ 21, 594 N.W.2d 328, 335).  In *Solis*, we held that "because prior instances of

domestic abuse are admissible to show motive under SDCL 19-19-404(b), those

instances can also be considered as part of a common plan or scheme of domestic

violence to prove joinder under SDCL 23A-6-23."  *Id.*  Indeed, under the *Solis*

rationale, any admissible use, not limited to motive, of prior wrongs, crimes, or

other acts evidence under Rule 404(b) could be used to show a common plan or

scheme for purposes of joinder.

---

4.     SDCL 19-19-404(b) provides in part:

> (b) Other crimes, wrongs, or acts.
>     (1) Prohibited uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>     (2) Permitted uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

SDCL 19-19-404(b) is identical to Federal Rules of Evidence 404(b).

[¶24.]     Regardless of whether the charges were properly joined under the same or similar character test, they were properly joined under the common plan or scheme test as interpreted in *Solis*, 2019 S.D. 36, 931 N.W.2d 253. Each of the offenses involved allegations of domestic violence in the form of assaults carried out by Loeschke against Greenwalt; therefore, they satisfy the common plan or scheme test applied in *Solis*.

*Whether Joinder Resulted in Substantial Prejudice*

[¶25.]     After finding that one or more of the criteria for joinder set forth in SDCL 23A-6-23 are satisfied, the circuit court determined that Loeschke made an insufficient showing of prejudice to warrant a severance of the charges. Loeschke contends the court erred in reaching this conclusion.

[¶26.]     In analyzing whether claims of prejudice should afford relief from joinder, circuit courts must consider whether joinder will cause "demonstrable prejudice over and above what would naturally occur" when two or more acts are joined in one indictment. *Solis*, 2019 S.D. 36, ¶ 24, 931 N.W.2d at 259–60. While it is the State's burden to satisfy one of the three criteria discussed above for joinder, if it has done so, the burden shifts to the defendant "to establish sufficient prejudice to justify severance of the joined counts." *State v. Goodshot*, 2017 S.D. 33, ¶ 12, 897 N.W.2d 346, 350 (citation omitted). To show sufficient prejudice, "[t]he defendant must show *substantial* prejudice from the joint trial, which constitute[s] a denial of a fair trial." *State v. Fool Bull*, 2009 S.D. 36, ¶ 24, 766 N.W.2d 159, 165. To establish substantial prejudice the defendant must make "more than a showing of a better chance of acquittal at a separate trial." *Solis*, 2019 S.D. 36, ¶ 21, 931 N.W.2d

at 259 (citation omitted). This burden is properly a high one "in order to offset the purpose of joinder, judicial efficiency." *Goodshot*, 2017 S.D. 33, ¶ 12, 897 N.W.2d at 350 (internal quotation marks omitted) (citation omitted).

[¶27.] This burden is unsustainable "[w]hen evidence of one crime is admissible in the trial of another crime" because it is well established that in such cases a defendant cannot show substantial prejudice resulting from joinder of the charges. *Goodshot*, 2017 S.D. 33, ¶ 12, 897 N.W.2d at 350 (quoting *Waugh*, 2011 S.D. 71, ¶ 14, 805 N.W.2d 480, 484). Other courts, including the Eighth Circuit Court of Appeals, have reached this same conclusion, holding that when evidence from one charge would be admissible at trial for a different charge, there can be no substantial prejudice arising from joinder of the charges because whether the charges are joined or not, a jury would hear about both events. *See United States v. Taken Alive*, 513 F.3d 899, 903 (8th Cir. 2008); *United States v. Erickson*, 610 F.3d 1049, 1055 (8th Cir. 2010); *United States v. Brown*, 653 F.3d 656, 662 (8th Cir. 2011).[5]

---

5. Determining that substantial prejudice cannot occur when evidence of one joined charge would be admissible at trial of the other joined charge is a conclusion that appears well established in cases similar to Loeschke's in the Eighth Circuit. In *Taken Alive*, the Eighth Circuit Court of Appeals determined that there was no substantial prejudice arising from joinder of two assault charges because "the evidence of one assault would be admissible in the separate trial of the other assault if admitted . . . to show absence of mistake or accident or to show intent . . . ." 513 F.2d at 903. Likewise, in *Erickson*, the Eighth Circuit Court of Appeals held that joinder did not create substantial prejudice when evidence of the two knife assaults that were joined "would have been admissible in a separate trial on the other offenses to establish Erickson's intent, among other things." 610 F.3d at 1055.

[¶28.] Loeschke contends that he was prejudiced by the joinder of these charges because he had asserted that the June assault was in self-defense, while he asserted that the February assault was an accident. Because he allegedly wished to present different defenses to each assault, Loeschke claims prejudice in that "the defense to one charge is confounded by the defense to another charge." Loeschke claims that the joinder "prevented [him] from testifying because he would be subject to cross-examination with regard to both allegations" while "the defenses to each of the allegations were independent of each other." Further, because Greenwalt did not testify at trial, Loeschke argues that he was not able to make these separate arguments through her cross-examination.

[¶29.] The State responds that Loeschke has failed to meet the high bar of substantial prejudice in this context. The State argues that Loeschke has failed to prove substantial prejudice arising from both offenses being presented in the same trial because "severance to shelter the jury from evidence of other crimes is not a factor if the evidence of other bad acts will come in [regardless] through SDCL 19-19-404(b)[.]" Further, the State argues that because Loeschke was acquitted of all charges relating to the June assault but convicted of all charges relating to the February assault, he was demonstrably not prejudiced by the two being tried together.

[¶30.] To determine whether the evidence of charges arising from events on different days in Loeschke's case would have been admissible at trial, we turn to the admissibility of that evidence under Rule 404(b). It is well established that Rule 404(b) allows admission of evidence of a separate crime or other act if used for a

purpose other than "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" and *Solis* provides clear authority to admit prior domestic violence evidence, such as that in Loeschke's case, to show motive, among other purposes, under Rule 404(b). 2019 S.D. 36, ¶ 23, 931 N.W.2d at 259.

[¶31.] Loeschke has failed to show that the evidence underlying the individual charges would not have been admissible against him as other act evidence if the charges were tried separately or that severance would have given him a better chance of acquittal on both assaults. As explained above, the domestic violence evidence in both instances would likely have been admissible motive evidence, and the June assault may well have been admissible at trial for the February assault to show lack of accident or absence of mistake, as one of Loeschke's explanations to law enforcement was that he accidentally stabbed Greenwalt in February. *See State v. Huber*, 2010 S.D. 63, ¶ 57, 789 N.W.2d 283, 301–02 (affirming circuit court's admission of evidence of prior domestic abuse in part to rebut the defendant's claim that he accidentally shot his wife).

[¶32.] Although Loeschke cites *Cross v. United States*, 335 F.2d 987 (D.C. Cir. 1964), as authority for his claim of prejudice, this case is not persuasive. In *Cross*, the District of Columbia Circuit Court of Appeals determined that joinder of the charges in that case violated Rule 14 of the Federal Rules of Criminal Procedure, which is essentially the same language as in SDCL 23A-11-2. *Id.* at 989. However, considering whether the defendant had made a sufficient showing of prejudice, the *Cross* court stated that prejudice occurs when joinder "embarrasses or confounds an

accused in making his defense." *Id.* This standard appears to be far below the high standard of substantial prejudice that constitutes denial of a fair trial as is required to prohibit joinder under our existing law.

[¶33.] Furthermore, the *Cross* court later clarified its decision in *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968) (stating that a defendant must make a convincing showing that "he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other"), *cert. denied*, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970). Other courts have also distinguished *Cross*. In *United States v. Scivola*, a case raising arguments similar to those made by Loeschke, the First Circuit Court of Appeals concluded that:

> The facts in *Cross* are distinguishable from those in this case. The defendant in *Cross* chose to testify at his trial notwithstanding the refusal of the district court to grant his severance motion. Thus, by referring to certain of the questions directed at him and his answers, he was able to demonstrate tangibly how his testimony prejudiced him on the church-robbery count. In this case, however, defendant chose not to testify. Thus, the claimed prejudice that he suffered was a result of testimony that he possibly would have given regarding the [second] count—the one for which he was convicted—but that he chose not to give because of its potential effect on the [first] count. Yet, to date, defendant has not explained what testimony he would have given and how that testimony would have affected the jury's decision on the [second] count. Thus, any determination that defendant suffered prejudice would be purely speculative on our part.

766 F.2d 37, 42 (1st Cir. 1985).

[¶34.] Here, similar circumstances are present. Loeschke's arguments as to the possible testimony he may have wanted to present at trial has evolved throughout the proceedings, and he has yet to specify with any clarity what

testimony he would have given had the charges been severed.[6] He ultimately chose not to testify at trial and has failed to explain how trying the charges together confounded his defense, particularly given that the evidence of the June 2018 or February 2019 incidents would have been admissible as other act evidence in each trial even if the charges had been severed. Therefore, any determination of prejudice that may have arisen from his testimony, had he given it, would be speculative on our part, especially when Loeschke was acquitted, without any testimony or evidence from the defense, of all charges stemming from the alleged June 17, 2018 assault. We determine that Loeschke was not substantially prejudiced by the joinder of the offenses charged; thus, the circuit court did not abuse its discretion when denying Loeschke's motion to sever.

### Admission of Phone Call Recordings

*Whether Greenwalt's Statements on the Phone Calls were Inadmissible Hearsay*

[¶35.]     Loeschke argues that Greenwalt's statements in the phone conversations between them that were played at his trial were inadmissible hearsay because they were out of court statements used to show the truth of the matter

---

6.     In his brief to the circuit court, he advised the court there "may be an alibi or third party perpetrator defense . . . or [he] may have physical disabilities that would preclude him from committing some of the offenses." At the hearing on his motion to sever, he referred to his desire to put on his version of the "context" of his relationship with Greenwalt, and as to the June 2018 incident, he indicated possibly going into whether Greenwalt had been under the influence of meth or had stolen property from Loeschke's friend. Now, on appeal to this Court, he refers for the first time to a self-defense claim with regard to the June 2018 incident, and at the same time mentions his desire to provide context for the February 2019 incident. Therefore, what Loeschke may or may not have presented in his defense if the charges had been severed for trial is speculative.

asserted and were not admissible under a hearsay exception. The State argues that Greenwalt's statements in the phone calls were used to provide "context" for Loeschke's admissible statements. The State contends these statements were not hearsay because they were not being used to show the truth of the matter asserted.

[¶36.]     In his brief to this Court, Loeschke included a transcript of the portions of the two phone calls that were played at trial which are set forth below:

**March 8, 2020 call:**

| | |
|---|---|
| Loeschke: | My uncle is pretty mad at me because what happened between me and Melissa. |
| Greenwalt: | Well, a lot of people don't really understand, and she kind of feels like, uh, you did it on purpose. |
| Loeschke: | I wish I could have . . . that whole f***ing day that happened between me and Melissa shouldn't have went down that way. Like, that's the reason I was trying to stay away for a week. [unintelligible] I was gone that day if the car wouldn't have ran out of gas. |
| Greenwalt: | She loves you. She still does. It's f***ing killing her. |
| Loeschke: | Yeah, I bet it is. Because of what I did to her, or supposedly did to her. |
| Greenwalt: | Supposedly? |
| Loeschke: | I'm not going to admit to something right now. |
| Greenwalt: | I know that. |
| Loeschke: | I told Melissa, Geno would call cops. |
| Greenwalt: | She told him to call 911 because she had a stab wound, and her intestines were hanging out when she first walked in. |
| Loeschke: | No, that was not intestines, that was fat. |
| Greenwalt: | Whatever it was, it was hanging out, and all she [unintelligible] |

**March 14, 2020 call:**

| | |
|---|---|
| Greenwalt: | She just doesn't understand, that's all. |
| Loeschke: | What doesn't? |
| Greenwalt: | She doesn't understand why you stabbed her. |
| Loeschke: | I didn't . . . mean to, and . . . |
| Greenwalt: | Didn't? Allegedly, anyways. |

Loeschke:  I . . . it wasn't.
Greenwalt:  It doesn't matter, don't even . . . don't.
Loeschke:  It didn't happen how it looked like it happened. Ok, let's put it, put it this way - - it left my hands, went into somebody else's hands, and I ended back up with it.  I don't know if it got caught on the coat, and pulled out of my hands.
Greenwalt:  She never touched it though.
Loeschke:  Somebody else did.
Greenwalt:  There was nobody else there.
Loeschke:  I had a cut mark on my wrist to, from it.
Greenwalt:  Are you sure you didn't . . . that could have happened when you slipped and fell.
Loeschke:  No.
Greenwalt:  Because that's when you pulled it out.
Loeschke:  No, it was already out.

[¶37.]     The circuit court ruled that Loeschke's statements in these phone calls were not hearsay as they fell within the admission of an opposing party hearsay exemption under SDCL 19-19-801(d)(2)(A).  Because the State argued that Greenwalt's statements were not being admitted for their truth, but rather as context for Loeschke's statements, the circuit court provided a limiting instruction informing the jury of the proper use of Greenwalt's statements, which provided in part:

> Statements made by and questions asked by Melissa Greenwalt during the recorded phone calls are also not evidence.  Such statements or questions were admitted solely for the purpose of context and cannot be used by you for any other purpose.  You may, however, consider Mr. Loeschke's own statements during the recordings as evidence.

[¶38.]     We have previously determined that "[s]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth."  *State v. Kihega*, 2017 S.D. 58, ¶ 29, 902 N.W.2d 517, 526 (quoting *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006)).  However, Loeschke

disputes that the statements here were used in this way, arguing that "whether a statement is offered for 'context' is beside the point—the relevant question is whether the statement is offered for its truth (and the answer to that question can be yes, even if the statement provides context for some other, admissible statement)" (quoting *United States v. Amaya*, 828 F.3d 518, 528 (7th Cir. 2016)). *See also United States v. Montez*, 858 F.3d 1085, 1090 (7th Cir. 2017) ("the ultimate question is whether the declarant's statement is relevant only if it is true").

[¶39.] When considering whether statements are being used for their truth or for another reason, including as context for an admissible statement, a court should evaluate each statement individually. Here, this did not occur on the record. And while the State asserts that some of Greenwalt's statements would fall into a hearsay exception if they are not properly considered contextual and are hearsay, the State relies on its context argument alone for other statements.

[¶40.] Regardless, the State acknowledges that Greenwalt's statement that "[s]he doesn't understand why you stabbed her" "arguably comes the closest to the merits of the case." This statement illustrates the potential non-contextual purpose of some of Greenwalt's statements—to show that Loeschke stabbed Greenwalt. This is especially concerning in that Greenwalt, who did not testify at trial, was the alleged victim and the only other person with first-hand knowledge of the incident. Further, the admission of this statement exemplifies the difficulty with the circuit court's failure to evaluate each individual statement made by Greenwalt and the necessity for them to be admitted to provide context for Loeschke's statements. Given the nature of the statements at issue here, the court should also have

considered the likelihood that particular statements, even if they could be deemed contextual, would be considered by the jury for their truth notwithstanding a limiting instruction. Here, the court did not undertake such an analysis although multiple statements by Greenwalt, rather than simply providing context, were instead, statements confronting Loeschke and refuting his claims.

[¶41.] For example, after Greenwalt stated that "[s]he doesn't understand why you stabbed her[,]" Greenwalt begins confronting Loeschke by relating the facts of the stabbing from her perspective: "She never touched it"; "There was nobody else there"; "That's when you pulled it out[.]" Although the State contends that Greenwalt's statement that "[s]he doesn't understand why you stabbed her" would have been admissible under the hearsay exception for adoptive admissions, Greenwalt's subsequent statements recounting facts were not all adopted by Loeschke.[7] Rather, Loeschke's statements indicate he tried to paint a different picture of what happened, stating that he "didn't mean to"; that "[s]omebody else did"; that he was "not going to admit to something right now"; and that the knife "was already out[.]" When viewing the statements above as a whole, it is apparent that not all of Greenwalt's statements were properly admitted as purely contextual background for Loeschke's statements.

[¶42.] Loeschke also argues that the admission of Greenwalt's statements as context for his statements during the phone calls was substantially more prejudicial than probative under SDCL 19-19-403 because, in his view, the State back-doored

---

7. An adoptive admission is a statement that is offered against an opposing party and "[i]s one that the party manifested that it adopted or believed to be true[.]" SDCL 19-19-801(d)(2)(B).

statements into trial to be used for their truth by classifying them as contextual. Loeschke argues that the probative value of Greenwalt's statements was substantially outweighed by "the danger of unfair prejudice and misleading the jury" because the jury may have improperly considered the statements for the truth of the matter asserted.

[¶43.]    Loeschke cites *State v. Little Long* as support for this argument by analogizing the State's admission of substantive evidence in that case under the guise that it was for impeachment purposes to the situation existing herein. 2021 S.D. 38, ¶¶ 40–42, 962 N.W.2d 237, 252–53. In *Little Long*, the State impeached its own witness when she denied having interacted with the defendant on the night of the murder with her statement to law enforcement that, on the night of the murder, the defendant told her that he "f***ing killed someone tonight[.]" *Id.* ¶ 44, 962 N.W.2d at 253. This Court determined that the State's impeachment evidence had "negligible" value in impeaching the testimony of the witness "when compared to the inflammatory nature of [the defendant's] admissions to [the witness]." *Id.* ¶ 42, 962 N.W.2d at 253. Additionally, although the circuit court in *Little Long* had given a limiting instruction advising the jury that the testimony could only be considered as a prior inconsistent statement in assessing the witness's credibility and not for the truth of the matter asserted, we determined that the circuit court abused its discretion in admitting the testimony because the "potential danger of the jury considering [the impeachment] testimony for the truth of the matters asserted . . . substantially outweighed the probative value of [this testimony] for impeachment purposes." *Id.* ¶ 44, 962 N.W.2d at 253.

[¶44.]     Although the statements in *Little Long* were admitted for different purposes than Greenwalt's statements here, the concern that the jury would consider the statements for their truth is similar. This case deals with the danger of the jury not just considering Greenwalt's statements as necessary context for Loeschke's statements, but also for the truth asserted—that Loeschke stabbed her. And the fact that Greenwalt is the victim as opposed to some other person speaking to Loeschke gives rise to a greater concern as to how these statements will be used or considered by the jury. These phone calls essentially allowed Greenwalt to refute Loeschke's version of the events without being subject to cross-examination.

[¶45.]     In Loeschke's view, the same principles that applied in *Little Long* regarding impeachment evidence "apply when examining hearsay evidence offered for the purpose of providing context." Loeschke contends that Greenwalt's statements had little contextual value and were really offered to "prove the assertion that Loeschke is the person that stabbed [Greenwalt], and that Loeschke did so purposefully." Loeschke argues that he was thus unfairly prejudiced in violation of SDCL 19-19-403 "because the jury heard [Greenwalt] say he stabbed her, but [Greenwalt] never testified at trial." Had the circuit court conducted a balancing analysis of Greenwalt's individual statements focusing on their value to provide context versus the truth of the matter asserted therein, we are doubtful that certain statements by Greenwalt would have been considered purely contextual. Thus, we conclude that the circuit court erroneously admitted the entirety of the two conversations without considering the contextual value of each statement individually to determine whether they would be substantially

outweighed by the danger of unfair prejudice—that the jury would likely consider the alleged victim's statements for the truth of the matters asserted.

[¶46.]    In light of our conclusion that the circuit court erred in admitting at least some of Greenwalt's statements, we must further determine if the error was prejudicial. When hearsay statements are erroneously admitted, "reversal may not always be necessary. To establish reversible error with regards to an evidentiary ruling, 'a defendant must prove not only that the trial court abused its discretion in admitting the evidence, but also that the admission resulted in prejudice.'" *Little Long*, 2021 S.D. 38, ¶ 49, 962 N.W.2d at 255 (citation omitted). "Error is prejudicial when, in all probability, it produced some effect upon the final result and affected rights of the party assigning it." *Id.* (cleaned up). We conclude, based on our review of the record, that prejudicial error did not occur here.

[¶47.]    At trial, setting aside Greenwalt's statements, the jury heard Loeschke's police interview in which he attempted to develop a story in which Greenwalt stabbed herself, while at the same time admitting that he tended to "black out" when he got angry and that he had "blacked out" during the time that Greenwalt was stabbed. This story conflicts with what Loeschke told law enforcement when they first arrived at the crime scene, that "it was an accident," and also conflicts with the story Loeschke provided during his later taped interview, wherein he explained that after he slipped on the ice on the deck, Greenwalt must have stabbed herself when she bent over to help him up. Loeschke proposed yet another alternative theory that Greenwalt was the one who slipped on the ice and stabbed herself in the process. Aside from Loeschke's inconsistent claims, other

evidence presented at trial included Officer Logan's testimony that when he entered the residence he found Greenwalt lying on the kitchen floor with a stab wound to her abdomen. A knife, with what was determined to be blood on the blade matching Greenwalt's DNA, was located in the living room. Loescke did not dispute at trial that he was with Greenwalt when the stabbing occurred and admitted to Deputy Zishka that "if Melissa said I did it I must have." The jury undoubtedly considered the implausible stories Loeschke provided to law enforcement and rejected them in light of the other evidence in the case.

[¶48.] Although the circuit court abused its discretion by admitting Greenwalt's statements, based on our review of the record, we conclude that there is no reasonable probability that the jury would have reached a different result had Greenwalt's statements been excluded. Therefore, the error does not rise to the level of prejudicial error requiring reversal.

[¶49.] We affirm.

[¶50.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.